ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

RUSSELL E. STEEDLEY,  )
   Plaintiff,  )
   v.  )   C.A. _____ 0 7 - 4 4 8
CORRECTIONIONAL MEDICAL SERVICES, Inc, et al,  )
   Defendants.  )

## MEMORANDUM IN SUPPORT OF TEMPORARY RESTRAINING ORDER/ PRELIMINARY INJUCTION

FILED
JUL 19 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

### Statement of the Case

This is a civil rights action brought under 42 U.S.C. section 1983 and 1997. Plaintiff is a prisoner at Delaware Correctional Center, in Smyrna De. 19977. The plaintiff seeks a temporary restraining order and a preliminary injunction (TRO/PI) to ensure that he receives proper medical care. Plaintiff has filed a complaint, attached hereto, and has exhausted his administrative remedies to the extent allowed by defendants. Defendants have subjected plaintiff to extensive and unreasonable delays. Plaintiff is filing his pleadings on an emergency basis as his health is rapidly deteriorating.

### Statement of Facts

Plaintiff suffers from a chronic disease/condition that requires immediate medical procedure in order to stave off serious irreparable physical damage if deferred. Plaintiff was diagnosed as having Osteoarthritis or Degenerative Joint Disease ("DJD") in his right hip in 1997. (See Appx 1 and 2)[1] Since that diagnoses, plaintiff has been treated with some form pain-reliever and/or anti-inflammatory, such as Naproxen and Indomethacin, over the passed ten years for his DJD condition. In September of 2006, plaintiff was examined by an Orthopedic Specialist/Surgeon named Dr. DuShuttle, who recommended a total hip replacement operation. (Appx 4, item# 18 (a) & (b)) Following that examination, plaintiff was seen by Dr. Durst and Dr. Van Dusin, two physicians employed by the defendants. Both of these doctors concurred with Dr. Shuttle's assessment, and placed referral orders to CMS's administrators requesting that corrective surgery be done on plaintiff's right hip. In addition, the two doctors for the defendants

---

[1] All references can be found Plaintiff's Appendix in Support of Memorandum in Support of Temporary Restraining Order/ Preliminary Injunction.

expressed fears that the plaintiff condition may develop into necrosis of the joint if not treated soon. (Appx. 4, Item# 20, 21, 22) Those requests for surgery have either been denied or deferred by CMS officials.

Since that date, plaintiff was placed on much stronger medication, Vicodine (a narcotic) that he is obligated to pay for despite having a medically recognized chronic condition. CMS compels all indigent patients to pay for all of their chronic care treatment since the defendants claim that they only have seven established Chronic Care Clinics ("CCC"). (Appx. 7 & 8) Therefore, all medical appointments and treatment that don't fall within those CCC, despite the fact that the medical condition may have been medically recognized as a chronic condition, inmates must pay for all appointments and treatment. According to the defendant's policy that limits all prescriptions for narcotic medication to 30-day limits, the plaintiff must make a monthly medical appointment in order to receive a renewed Vicodine regiment. The defendant's dysfunctional medical appointments are so erratic that the plaintiff has gone days, and at times, weeks at a time without any pain-relief medication, despite submitting a timely medical appointment forms. (Appx. 9 to 13)

Plaintiff has filed several Medical Grievances ("MG"), regarding the defendant's failure to move forward with all the medical experts recommendation for a total hip operation for him, but all MGs have been denied. (Appx. 14, 15) In March of 2007, Nurse Practitioner Ihuma, revealed to the plaintiff that his internal organs, such as his liver and kidneys are no longer operating at 100% and that the long term use of the pain relievers prescribed by the defendants (and previous other contracted health care providers) are responsible. (Appx. 15) In June of 2007, at plaintiff's last medical appointment, NP Ihuma stated that plaintiff's kidney condition has grown worse and that she was placing him on medication that is suppose to help slow the deterioration of plaintiff's kidneys. The plaintiff asked about the status of his hip replacement operation, to which NP Ihuma replied, "the administrational staff here feel that you are too young for a hip replacement surgery, which they claim was based off Dr. DuShuttle recommendation." (Appx. 15) However, several other inmates, including David Williamson have recently received similar surgical procedures. (Appx. 16) Plaintiff added, that Dr. DuShuttle actually said that, "if you were to get a

operation now, there's a strong likelihood that they would have to perform that same operation again in another 10 or so years, due to the replacement joint wearing down" – not that I was too young for the operation." (Appx. 17) NP Ihuma agreed, but stated that it is out of her hands. When plaintiff asked about what will happen if CMS or any other health care provider continued to treat him with the same pain-relief medication as opposed to performing the operation? NP Ihuma stated that the plaintiff's internal organs, such as his kidneys, will deteriorate to the point in which he will require a dialysis machine and; if the necrosis in the joint continues there's a strong possibly that the leg will have to be ambulated.

ARGUMENT

THE PLAINTIFF IS ENTITLED TO A TEMPOPARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

- ➢ A litigant is entitled to a TRO/PI upon showing the following:
- ➢ That the Plaintiff is in danger of irreparable injury;
- ➢ That the non-moving party will not be unduly harmed;
- ➢ That the Plaintiff has a strong likelihood of success on the merits; and
- ➢ That the TRO/PI is consistent with public interest.

Valentine v. Beyer, 850 F.2d. 951, 955 (3rd Cir. 1988)

Plaintiff easily meets this threshold and offers the following in support:

➢ IRREPARABLE INJURY

1. Plaintiff suffers from a chronic disease/condition that have caused or do cause any of the following:

    A. Poses a likely and significant risk of causing permanent injury or residual damage;
    B. Causes impairment of normal daily functions; and or
    C. Causes undue acute pain and/or suffering

2. For example, both of the plaintiff's deteriorating conditions (DJD condition and weakening kidneys) are objectively serious, which mandates adequate minimal care. (Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 Led. 2d 811 (1994). Indeed, the adverse effects of long term use of all the nonsteroidal anti-inflammatory drugs ("NSAID") that the defendants' physicians have elected to treat plaintiff's DJD condition with - as oppose to providing him with

3

corrective surgery - are well documented in the Physician's Desk Reference ("PDR"). The same warnings for these pills are labeled on the drug's containers that any layperson could infer the need for adequate medical care or found on the Internet. (Foelker v. Outagamie County, 394 F.3d 510-512-13 (7th Cir. 2005). Moreover, the two conditions, which are intermingled, have been diagnosed by CMS doctors as requiring treatment -- thus are- also considered "serious" under this scheme and mandate treatment. (Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.ed.2d 521 (1976).

3. In addition, plaintiff alleges that defendants have committed any of – but not limited to – the following violations:

   A. Denied – intentionally/gross reckless disregard – care for his known serious medical needs;
   B. Disregard – intentionally/gross reckless disregard – his known serous medical needs;
   C. Provided – intentionally/gross reckless disregard – care known to be substandard for non-medical reasons; and
   D. Created an inordinate delay – intentionally/gross reckless disregard – in providing care known to be needed; none of which based on any legitimate medical or penological factor.

4. Accordingly, defendants' conduct is a clear violation of – intentionally/gross reckless disregard – Eighth Amendment. (Estelle, supra at 105). Thus, as a matter of law, the continuing deprivation of plaintiff's constitutional rights does also constitute irreparable harm. (Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct 2673 (1976). The Elrod Court noted, in addressing person medical malfeasance, that our courts are in agreement that money awards are unthinkable compensation later. (Id). This is particularly true in cases of risk to health and life. (Lopez v. Heckler, 713 F.2d 18432, 1437 (9th Cir 1983).

➢ ABSENSCE OF HARM TO NON-MOVING PARTY

5. The balance of hardships overwhelmingly favors plaintiff in this case. Plaintiff has established following:

 A. That plaintiff's DJD condition is serious, of which two doctors for the defendants agreed that will develop into necrosis of the joint if the replacement surgery is not performed, concomitant with the recommendations and approve by an orthopedic specialist.

 B. That plaintiff's weakening kidney condition is a direct result of the defendants' alternative treatment with ineffective drugs to the surgery, as revealed by defendants' Physician and Nurse Practitioner; and

 C. That any further delays will expose plaintiff to undue suffering and a likelihood of substantial risk to irreparable harm (i.e. placed on a dialysis machine and/or a limb being amputated).

6. Consequently, the present suffering of the plaintiff and the likely substantial risk of permanent/future harm to him is enormous. The suffering CMS will experience if the Court grants the order is minimal or nothing more than expected of any Correctional Health Care Provider ("CHCP").

 A. For example, providing doctor recommended surgical procedures are something expect of any CHCP and obligated to do for one with such a serious medical condition; and

 B. Defendants have already performed similar procedures for individuals who are younger than the plaintiff.

7. CMS's hardship amounts to nothing more than the very business that it agreed to perform when it contracted with the Delaware DOC. In reality, CMS has no legitimate standing to claim otherwise, and the fact that CMS continues to deny plaintiff the surgical procedure established CMS deliberate indifference. Indeed, until CMS faces real hardship (e.g. fines for not providing treatment, etc), it will continue to violate plaintiff's rights. Duran v. Anaya., 642 F.Supp. 510, 527 (D.N.M. 1986); Securities Industry And Financial v. Garfield, 469 F.Supp.2d 25, 41 (D.Conn. 2007).

➤ PLAINTIFF WILL LIKELY SUCCEED ON THE MERITS

8. Plaintiff has a great likelihood of success on the merits because defendants' acts have been condemned as violations of the Constitution: Deliberate indifference to serious medical needs. Defendants, for example, have engaged in any of but not limited to the following:

   A. By avoiding the cost of replacement surgery for substandard long-term use of NSAID, to which all the prescriptions' warnings of adverse effects engendered by long-term use are surfacing; (Jackson v. F.C.M.S., 380 F.Supp 387 (D.Del 2005); Spruill v. Gillis, 372 F.3d 218, 236 (2004); Estelle, supra);

   B. By creating a continuous pattern of interrupting drug treatment, that leaves plaintiff without any chronic care for days and/or by refusing to correct said interruptions, despite the obvious need to do so. Jackson, supra.; and

   C. By intentionally employing less efficacious treatments, however, for non-medical factors, such as budgetary restrictions and/or a custom/policy of cost-avoidance, which exposes plaintiff to undue suffering and permanent injury. West v. Keve, 571 F.2d 158 (3rd Cir 1978); Williams v. Vincent, 508 F.2d 541 (2d Cir 1974), Tillery v. Owens, 719 F.Supp 1256, 1287 (W.D. PA 1989) Affirmed 907 F.2d 418 (3d Cir. 1990); and Durma v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir 1993))

Accordingly, plaintiff has properly alleged and properly supported with facts the essential elements for his claim of deliberate indifference against the defendants:

- Serious medical needs, of which were;
- Objectively known by defendants and; however, were
- Subjectively disregarded by defendants (i.e. defendants had personal involvement and a culpable state of mind).

➤ RELIEF SOUGHT WILL SERVE THE PUBLIC INTEREST

9. The public interest is best served when all ill prisoners are granted adequate health care. (White v. Napoleon, 897 F.2d 103, 111 (3d Cir 1990)(Citing Estelle v. Gamble, 429 U.S. 97 (1976) (Prompt medical care is needed to avoid unnecessary and wonton infliction of pain). Also, the

6

public interest is served because it is always in the public interest for defendants/prison officials to obey the law. Duran v. Oakland County Prosecutor's off', 402 F.Supp (p.1379, 1393 (E.D. Mich. 1975) ("the Constitution is the ultimate expression of the public interest.").

> ### PLAINTIFF SHOULD NOT BE REQUIRED TO POST SECURITY

10. Plaintiff is an indigent prisoner unable to post security and he requests the Court to exercise its discretion to excuse an impoverished litigant from doing so. In view of the serious medical dangers confronting the plaintiff, the court is warranted in granting the relief requested without requiring the posting of security.

### CONCLUSION

For the foregoing reasons, the Court is warranted in granting the motion in its entirety.

_/s/ Russell Steedley_
Russell Steedley
SBI#249572, W-1, H-13
Delaware Correctional Center
1181 Paddock Rd
Smyrna, DE 19977

16 July, 2007
Date

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RUSSELL STEEDLEY<br>    Plaintiff,<br>v.<br>CORRECTIONAL MEDICAL SERVICES, Inc, et al,<br>    Defendants. | )<br>)<br>)   C.A. _____<br>)<br>) |

## ORDER TO SHOW CAUSE AND TEMPOPARY RESTRIANING ORDER/PRELIMINARY INJUNCTION

Upon the supporting affidavit of the Plaintiff and the accompanying memorandum of law, it is ORDERED that defendant Correctional Medical Services, Inc. (CMS) show cause in room ___ of the United States Courthouse, 844 King St, Wilmington, DE 19801, on the ___ day of _____ 2007, at _____ o'clock, why a preliminary injunction should not be issue pursuant to Rule 65 (a), Fed.R.Civ., enjoining said defendant, its successors in office, agents and employees and all other persons acting in concern and participation with CMS, to provide adequate medical care to provide replacement surgery, and physical therapy designed to restore and maintain the full function of Plaintiff's right hip and prevent any further permanent damage and/or injury.

IT IS FURTHER ORDERED that this order to show cause, and all other papers attached to this application, shall be served on the defendant CMS by _____ 2007, and the U.S. Marshal Service is hereby directed to effectuate such service.

_____                                    _____
Honor Judge