ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

RUSSELL E. STEEDLEY,  )
   Plaintiff,  )
   v.  )  C.A. 07-448
CORRECTIONIONAL MEDICAL SERVICES, Inc, et al,  )
   Defendants.  )

## PLAINTIFF'S APPENDIX IN SUPPORT OF MEMORANDUM IN SUPPORT OF TEMPORARY RESTRAINING ORDER/ PRELIMINARY INJUCTION



FILED JUL 19 2007 U.S. DISTRICT COURT DISTRICT OF DELAWARE

BD scanned

## Table of Contents

| Item(s) | Page(s) |
|---|---|
| CMS's letter (11-17-00) | 1. |
| CMS's letter (12-6-01) | 2. |
| Affidavit of Russell Steedley (Plaintiff) | 3 to 6. |
| CMS's Email to DOC regarding CCC policy (Chronic Care Clinics defined) | 7, 8. |
| Plaintiff's letter to FCM | 9, 10. |
| Request for Medical Appointments for renewal of medication | 11 to 13. |
| Medical Grievance | 14. |
| Medical Grievance Appeal (Denied) | 15. |
| Affidavit of David Williamson | 16. |
| Affidavit of Michael Moore | 17. |



Correctional Medical Services

November 17, 2000
REMED0011012
Steedley, Russell

Mr. Steedley,

    After carefully reviewing your chart and grievance I have concluded that you have been seen for this arthritic condition for a significant period of time. I also noted that Ms. Thorpe our nurse practitioner saw you on 11-15-00. I also noticed that at this time she did reorder your Indocin and ordered Tylenol as well. I hope this will solve your problem and if I can be of further assistance please let me know. Thank You.

Aaron Pendry RN
Director of Nursing

Delaware Correctional Center
Rt. 1, Box 500 Smyrna Landing Rd.
Smyrna, DE 19977
302/659-5045
Fax: 302/659-5049

App. 1



Correctional Medical Services

Date:    12/6/01

To:      I/M Russell Steedley SBI# 249572 SI    F-8

From:    Robert Hampton, RN DON

Re:      Request for medical services

Above named inmate is currently being treated for his chief complaint of degenerative Joint Disease (DJD). The current plan prescribed is exercise as tolerated and Tylenol 650mg every 8 hours as needed. It has been explained to this inmate that his disease will progress and the medical department will address it accordingly. The physician's impression of this inmate's condition as of 11/21/01 was that he can ambulate without difficulty, is capable of working and can workout. At this point surgery is not warranted and not recommended.

*Robert Hampton, RN*

Robert Hampton, RN DON


Cc: Warden, Thomas L. Carroll


App. 2

## AFFIDAVIT OF RUSSELL E. STEEDLEY

1. I, Russell E. Steedley, am the Affiant listed above and do depose and state the following facts regarding my medical treatment.

2. The Affiant was born on August 4th, 1959, in New York City.

3. The Affiant is currently incarcerated at D.C.C., in Smyrna Delaware and that he has been so since June 10th, 1990.

4. On June 10th, 1990, just prior to Affiant's arrest, he sustained a serious injury to his right leg while leaping down a staircase.

5. On June 10th, 1990, Affiant was taken to KGH where X-Rays were taken only on his right knee and left ankle, which revealed a broken right Tibia.

6. On June 12th or 13th, 1990, Affiant was taken to KGH, where Doctor DuShuttle performed an operation to fix right tibia, implanting two screws just below his right knee.

7. In the summer of 1997, Affiant began to experience pain in his right hip joint and initial signs of mobility problems. A medical appointment was set up and he was given Motrin.

8. In the summer of 1998, Affiant right hip pain increases and mobility begins to decrease where he begins to walk with a limp.

9. In the summer of 1998, at a medical appointment with Dr. Miller, Affiant is told that he has Degenerative Joint Disease (DJD) or Osteoarthritis in his right hip and it's a chronic disease.

10. At same appointment #9, Dr. Miller informed Affiant of the following:
    (a) Affiant had a permanent injury/condition that would not heal on its own;
    (b) That it will continue to deteriorate and cause great discomfort;
    (c) That Affiant mobility will diminish greatly;
    (d) Treating Affiant condition with pain-relievers is always the initial step;
    (e) And that it may come a time when conventional pain-relief treatment won't be enough to help the Affiant.

11. At same appointment #9, Affiant is prescribed Indocin for treatment.

12. In the spring of 1999, Dr. Miller tells Affiant that his case is being referred to PHS head physician, Dr Ivens, for discussing operation on right knee and hip. That referral meeting is never completed.

13. On November 13, 2000, Affiant writes to the Warden Tom Carroll of D.C.C., concerning "Co-pay issue" and "discontinuation of meds" and potentiality of medical toxicity from meds, as expressed by Dr. Cancino, the treating physician for CMS.

14. Between the years 1999 and 2003, Affiant Chronic Care status is constantly changed by CMS and FCM, the contracted health care providers, forcing Affiant to eventually involve the Lt. Governor's Office. During this time period Affiant treatment for "DJD" becomes erratic and he often goes days and some times weeks without pain relief.



App. 3

15. On November 25, 2003 Affiant writes to FCM expressing concerns of medical toxicity and need for alternative treatment three years after Dr. Cancino expressed concerns.

16. In the winter of 2004, Affiant DJD conditions has deteriorated to the point where:
    (a) Can no longer lift right leg up to a 45 degree angle;
    (b) Unable to run at any speed or stand in one place for long periods of time;
    (c) Ambulating with a pronounced limp that wobbles from side to side, which resembles a Penguin's walk;
    (d) Affiant is constantly joked about and receives scornful ridicule from staff and other inmates, which negatively impacts affiant's emotional and mental state;
    (e) Struggles noticeably to put on socks and shoes;
    (f) Experiencing acute pain and suffering, even with pain-relief treatment;
    (g) And this significant impairment impact on affiant's life has drastically curtailed his normal daily functions, (e.g. inability to promote good health via meaningful exercise).

17. In the winter of 2005, Affiant is assigned a walking cane by health care providers. Affiant requests for an hip operation are continually shot down by treating physicians, each of whom all claim that he is either too young for an operation or that the present contracted health care won't pay for that type of operation.

18. On September 12th, 2006, Affiant was examined by Dr. DuShuttle an Orthopedic Specialist, and he recommended total hip replacement for right hip.
    (a) Dr. DuShuttle states that it isn't often that a person whose the age of the Affiant receives a total hip replacement;
    (b) Dr. DuShuttle added, however Affiant condition was not produced naturally, but rather by an accident;
    (c) that the Affiant hip condition is so bad that there's no other option but to get the operation;
    (d) And that the choice was up to the Affiant to get the operation or try to live with the pain.

19. In October 2006, Affiant was seen by Dr. Durst for CMS, who concurred with Dr. DuShuttle's recommendations, after viewing Affiant's X-Rays. He filed report to CMS administrators requesting an operation.

20. At same appointment #19, Dr. Durst expressed great concern that Affiant condition may deteriorate into necrosis since original cause of DJD was due to significant impact that occurred 16 years ago, as oppose to a natural aging progression.

21. At same appointment #19, Affiant complains that conditions found in #16 (a to g) have exasperated and that the pain in right hip has grown increasingly unbearable. Dr. Durst prescribes stronger painkillers (a mild narcotic), name unknown.

22. In December 2006, Dr. Van Dusin of CMS, expresses belief that Affiant condition requires surgery, but first recommends Affiant be seen by physical therapist for a second opinion. Doctor's places Affiant on Vicodine (a narcotic) after experiencing an adverse reaction to previously prescribed meds for pain relief. The relief is minimum.

23. In January 2007, Affiant files Medical Grievance regarding physical therapist referral not being kept.

24. In January 2007, Affiant's Grievance is heard by CMS Nurse Debbie Rodweller and both agree to drop the issue providing that affiant is taken to a Physical Therapist within a couple of weeks.

App. 4

(4)

25. In February 2007, Affiant is taken to Physical Therapist at (KGH) Jonnice Steward.

26. At same appointment # 25, PT Steward recommends surgery as well, stating that physical therapy more suited after the operation since Affiant condition and mobility is so bad. PT recommends mild exercise regiment to help improve muscle structure around Affiant's hip and knee, which has withered away due to restricted mobility and stability in right leg.

27. In March 2007, Affiant is seen by Nurse Practitioner Ihmua of CMS, who reviews medical record:
    (a) NP Ihmua places another referral with an Orthopedic;
    (b) Affiant is told, according to last blood test that his Kidneys are not function at 100%;
    (c) NP Ihuma orders a battery of tests, including blood and urine test;
    (d) And NP Ihuma that CMS will no longer treat the Affiant's severe pain produced by my DJD condition with Vicodine.

28. On March. 19th, 2007, Affiant sent a second letter to Nurse Rodweller inquiring about his hip replacement operation since he isn't being treated for the pain from his chronic condition.

26. In March or early April 2007, Affiant has blood and urine taken for test by CMS.

27. On April 10th, 2007, Affiant files another Medical Grievance regarding hip replacement operation.

28. On April 19th, 2007, Affiant has Grievance hearing with Unknown Nurse for CMS, who denies affiant's request that CMS acknowledge and comply with Dr. DuShuttle an Orthopedic; CMS physicians Dr. Durst and, Dr. Van Dusan; and Physical Therapist Jonnice Steward recommendations:
    a. Nurse states that although Affiant DJD condition is very bad, he is too young to receive a hip replacement;
    b. Nurse states that the orthopedic and physical therapist agree that his condition is bad, but he would probably need another hip operation after some 10 or so years go by to replace the worn down artificial joint;
    c. And Affiant's Medical Grievance has been appealed to next level of the proceedings, to be heard by the Director of Nurse (CMS) and Captain McCraner (D.C.C. representative).

29. In April 2007, Affiant interviewed inmate Dave Williamson, W-1 unit, recently had his knee replaced and he is younger than Affiant by some 7 years. (See: Williamson's Affidavit)

30. On May 5th, 2007, Affiant had an EKG performed.

31. On May 7th, 2007, Affiant was seen by Dr. Van Dusan for Chronic Care Medical Appointment:
    a. Dr. Van Dusan reports that Blood Pressure and Cholesterol levels are back to normal (120/78);
    b. Negative blood test of HIV and Hepatitis;
    c. EKG looks good;
    d. Doctor placed a formal notice recommending the operation (Total hip replacement);
    e. Doctor stated that Affiant condition has deteriorated significantly and that necrosis may be the problem in the near future if operation is put off;
    f. And Doctor told Affiant to expect to be either seen by a specialist soon;
    g. Or that since Affiant has already been tested and prepped for the operation, there's no need to do it again providing CMS acts hastily;


App. 5

    h. And Doctor placed Affiant back on Vicodine again at double the dosage originally received in the past.

32. CMS's denial of Affiant Grievance (See #28), and continuous putting off of a medical procedure that Affiant clearly needs are not rooted in any legitimate medical factors, or in any exercise of professional medical judgment. They systemically continue to deny Affiant of the necessary care/procedure required in accordance with U.S. Constitutional 8th Amendment Rights as outlined in Estelle v. Gamble, 429 U.S. 97, 103 97 S.Ct. 280. Their action is based on CMS's custom/policy of cost-avoidance.

33. The above is true and correct, and it is based on Affiant's personal observations and experiences.

Sworn and subscribed before me this 23, May 2007.

_____  
Russell Steedley, SBI#249572

_____  
Notary Public

App. 6

(6)

ENTERED 5-11-07

**Hosterman Ron (DOC)**

From: Jan McLaren [JMcLaren@cmsstl.com]
Sent: Thursday, May 10, 2007 2:21 PM
To: Hosterman Ron (DOC)
Subject: Chronic Care Clinics defined



Chronic Care Clinics
Defined.d...

Ron

Please include this article in the Isthmus per our discussion at OPS yesterday.

Jan

Sausage 1.06
Stamps .41

App. 7

-1-

**Chronic Care Clinics Defined**

CMS and its medical staff wish to clarify what is and what is not covered under the Chronic Care Clinics offered at this site. CMS follows the nationally recognized NCCHC (National Commission on Correctional Health Care) standards for operating Chronic Care Clinics. The confusion of what is covered under Chronic Care Clinics and what is not seems to arise from the definition of what a Chronic disease is versus what a Chronic Care Clinic is. A chronic disease is defined as: an illness that effects an individual's well-being for at least a period of six months and is not curable, but can be managed to provide optimum functioning within any limitations the condition imposes on the individual. A Chronic Care Clinic is a treatment plan and regular clinic visits for specific, common diseases that are defined by the NCCHC. These diseases are:
1. Asthma
2. Diabetes
3. High blood Cholesterol-hyperlipidemia
4. HIV/HEP. C
5. High Blood Pressure- hypertension
6. Seizure Disorder
7. Tuberculosis

All other disease states, even though they may be life-long, recurring, and greater than six months in duration, are <u>excluded</u> from the Chronic Care Clinics performed at this site. This <u>does not</u> mean that treatment is not available for other conditions such as: pain, arthritis, psoriasis (dry skin), migraines headaches, fungal infections, or warts of any type. The medical staff will treat any and all chronic diseases however; if they are not listed on the above NCCHC defined Chronic Care Clinics list you will be charged for the visits like any other sick-call request.

App. 8

March 26, 2003

First Correctional Medical, Inc.
12795 North Wildlife Ave.
Tucson, AZ 85737
Attn: Dr. Tammy Kastre

Dear Dr. Kastre,

    I wish to bring to your attention some of the questionable policies that are in practice at the Delaware Correctional Center by the First Correctional Medical ("FCM") staff. I'm an inmate incarcerated at this prison who has been receiving medical treatment for over seven years for two previously diagnosed chronic conditions: High Cholesterol and Blood Pressure; and Osteoarthritis or degenerative joint disease ("DJD") in my right knee and hip.

    I've received incessant treatment from two previous health care providers contracted by this institution for both conditions. And when your organization (FCM) took over for the previous health care provider, my treatment continued. However, as of Dec. 2002, a drastic change has taken place regarding the policies and practices of FCM in which I was, without warning, dropped from chronic care treatment regarding my DJD condition.

    I filed an institutional medical grievance to resolve any misunderstanding and was later seen by a physician here who claimed that my DJD condition is no longer considered a chronic condition that FCM will treat. After detailing my previous experience with the past health care providers regarding my DJD condition, the physician changed his position and filled out an ordered for Naproxen, the medication I was previously receiving for my DJD condition, which was to continue until mid April, where I was to be reevaluated by one of FMC physicians. However, once the first prescribed package of medication, which contained 30 pills – taken 2 twice a day – ran out, I was told by the nursing staff that I must make another medical appointment in order to get a refill, despite what the medical package stated.

    For the past three months, I have been forced to file 4 separate medical grievances just to obtain an appointment or receive a refill of medication and it is my understanding that this is not an isolated incident. To date, none of my medical grievances have been resolved. What was a smoothly ran medical operation has now turned into a quandary, where the medical staff here pooch-pooch all inquiries while completely ignoring their medical obligations, such as establishing a chronic care treatment program for all inmates/patients under their care; charging inmates/patients with previously diagnosed chronic ailments for medical appointments and meds; and failing to provide timely refills of all prescribed medications.

    I wish to make you aware of these problems and more. And to ask if the FCM policies practice here at Delaware Correctional Center, regarding chronic care, have your auspice or are they simply trying to save money by failing to provide the appropriate medical treatment outlined by the Nation Commission on Correctional Health Care ("NCCHC") and Delaware Law?

    I ask that you look into this matter and correct any errors of polices found to be in practice by the medical staff here and that you supply me with your official position regarding the contents of this letter.

App. 9

     I hope that your office can supply myself and other similarly situated with the answers and relief to some of the hardships that has befallen us since FCM radical change in policy. Your cooperation and assistance in this matter will be greatly appreciated.

                                Very truly,

                                Russell Steedley
                                SBI#00249572, C Unit
                                Delaware Correctional Center
                                1181 Paddock Rd,
                                Smyrna, DE 19977


Cc:    Gilbert Steedley
        NCCHC
        File

App. 10

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
### FACILITY: DELAWARE CORRECTIONAL CENTER

This request is for (circle one): MEDICAL  DENTAL  MENTAL HEALTH

Name (Print): Russell Steedley

Housing Location: C

Date of Birth: 8/4/59

SBI Number: 00249572

Date Submitted: 5/26/03

Complaint (What type of problem are you having)? Refill/reorder of HCTZ (Hydrochlorothiazide) for High Blood Pressure And Naproxen for Chronic joint pain.

Inmate Signature: [signed]

Date: 5/26/03

The below area is for medical use only. Please do not write any further.

S:

O: Temp:___ Pulse:___ Resp:___ B/P:___ WT:___

We see you got your medications 5/28/03.

A: Good. Pull off the 'Bar code' sticker when your meds get down to 4-5 days worth,

P: Put those stickers on a sick-call form and send them in to us. OK?

Thanks,
Bob
RN 5/28/03

E:

[Stamp: RECEIVED MAY 27 2003]

Provider Signature & Title         Date & Time

3/1/99 DE01
FORM#:
MED
263

App. 11

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
### FACILITY: DELAWARE CORRECTIONAL CENTER

This request is for (circle one): **(MEDICAL)**  DENTAL  MENTAL HEALTH

16/8

Name (Print): Russell Steedley

Housing Location: W-1 A12

Date of Birth: 8/4/59

SBI Number: 249572

Date Submitted: 2/24/07

Complaint (What type of problem are you having)? The pain relief, "vicodin" has run out and I need to see a doctor to renew treatment for Chronic joint disease.

Inmate Signature: [signature]

Date: 2/24/07

**The below area is for medical use only. Please do not write any further.**

S: Scheduled c̄ MD/MLP. —gm

O: Temp:____ Pulse:____ Resp:____ B/P:____ WT:____

A:

P:

RECEIVED
NOV 27 2006
EDUCATIONAL MATERIAL
CORRECTIONAL MEDICAL SERVICES

E:

Provider Signature & Title

Date & Time: FEB 27 2007  gm

RECEIVED

EDUCATIONAL MATERIAL
CORRECTIONAL MEDICAL SERVICES

3/1/99 DE01
FORM#:
MED
263

App. 12

3408

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
### FACILITY: DELAWARE CORRECTIONAL CENTER

This request is for (circle one): (MEDICAL) DENTAL  MENTAL HEALTH

Name (Print): Russell Steedley

Housing Location: W-1

Date of Birth: 8/4/59

SBI Number: 249572

Date Submitted: 5/30/07

Complaint (What type of problem are you having)? I need to see a chronic care physician for reordering Vicodin pain reliever medication.

Inmate Signature: [signature]

Date: 5/30/07

The below area is for medical use only. Please do not write any further.

S: You're not due for chronic care, you were just seen 5/7/07. You'll have to be seen regular visit c/ mp/mcp — KC

O: Temp: ___ Pulse: ___ Resp: ___ B/P: ___ WT: ___

[stamp: RECEIVED JUN 0 6 2007]

A:

P:

E:

Provider Signature & Title: ___

Date & Time: ___

3/1/99 DE01
FORM#:
MED
263

App. 13

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 04/12/2007

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** STEEDLEY, RUSSELL E | **SBI# :** 00249572 | **Institution :** DCC |
| **Grievance # :** 106965 | **Grievance Date :** 04/10/2007 | **Category :** Individual |
| **Status :** Unresolved | **Resolution Status :** | **Resol. Date :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date :** 04/10/2007 | **Incident Time :** |
| **IGC :** Merson, Lise M | **Housing Location :** Bldg W1, Tier A, Cell 12, Single | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims: In September 2006, Dr. Dushuttle on orthopedic specialist reviewed my medical records and condition (ortcoarthritis) in my right hip and recommended total hip replacement surgery. Following that recommendation, Dr. Van Dusen also reviewed my case and agreed with Dr. Dushuttle. In January 2007, KGH physical therapist Janice Stewart put me through a battery of mobility tests and concurred with the previous doctors, that the only viable option for my chronic hip condition is surgery. To date that operation is being put off for another medical experts opinion and I am being treated with the same pain relievers that are negatively impacting my kidneys.

**Remedy Requested :** To have CMS follow through with the recommendations made by the orthopedic and physical therapist specialist.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** YES | **Date Received by Medical Unit :** 04/12/2007 |
| **Investigation Sent :** 04/12/2007 | **Investigation Sent To :** |
| **Grievance Amount :** | |

Page 1 of 4

App. 14
(14)

## Medical Grievance Appeal Form

This must be completed and returned to the IGC by the due date. If not received by the due date your appeal will not be processed. This form is to be returned via the Grievance Box **If you do not wish to appeal you must return this form with the notation that you do not wish to appeal.** DO NOT send this form to Medical Department.
Please specify the reason for the appeal in the space below.

Grievant: Russell Steebley   SBI#: 00249572

Housing Unit: W-1   Case#: 106965

Date: 6/26/07   Due Date: 7/2/07

I am appealing the Level 2 Appeal Process decision that states that: "CMS Administrators are postponing any decision regarding the operation on my hip while awaiting further information from Dr. Van Dusin," because any further delay in moving forward with the surgery to repair my right hip only exacerbates my condition and suffering while inexorably leads to irreversible damage to both my kidneys and right leg. I am currently being treated with Indocin and Vicodin for my Osteoarthritis condition, which is a chronic condition, and yet, according to CMS's new policy, I'm required to pay for all medical appointments and treatment. This policy is in direct violation of Delaware Law 11 Section 6536 (b) and (c). In addition, Nurse Practitioner Ihuma stated that my kidney problems are a byproduct of long-term use of the pain-relievers and anti-inflammatory drugs that CMS and all other contracted health care providers have prescribed as treatment for my chronic hip problem.

Submitted 6/26/07
1430 hrs

INMATE SIGNATURE

App. 15   If you need additional space, attach 8.5" X 11" size sheets of paper.

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following in support of <u>Williamson v. Correctional Medical Services, Inc., et al</u>, 06-379-SLR:

2. On 03-14-07, Affiant received reconstructive knee surgery to replace a ruptured Anterior Cruciate Ligament (ACL).

3. DuShuttle, MD was the outside orthopedic specialist who performed the procedure.

4. DuShuttle had read the MRI results and performed a specialized knee exam in June 2006 (circa).

5. DuShuttle informed Affiant of the following:

    (a) Affiant had a permanent injury that would not heal on its own;
    (b) That it caused further deterioration of the knee joint and or arthritis; and
    (c) That the inherent instability of the knee joint was a significant hazard of creating falling or collapsing incidents.

6. DuShuttle recommended the following:

    (a) Reconstructive surgery;
    (b) Special ACL "Don-Joy" knee brace; and
    (c) Post-op physical therapy.

7. DuShuttle, however, candidly opined that the needed surgery would likely fail because he believed that CMS would refuse to provide the Don-Joy brace and would refuse to provide the –critical- physical therapy.

8. In fact, DuShuttle stated flatly that the brace ran about one-thousand dollars, which is why CMS would refuse to provide it.

9. For nine months after DuShuttle made his informed and professional medical judgment/recommendation, CMS refused to provide the Don-Joy brace ostensibly due to a phantom security concern.

10. Affiant filed a TRO/PI demanding the needed care and when he challenged CMS's pretext they conceded and provided the Don-Joy brace.

11. Affiant had already experienced the following due to his permanent knee injury:

    a) Acute pain and suffering;
    b) Significant impairment of his normal daily functions (e.g. inability to promote good health via meaningful exercise);
    c) Significant instability of the knee joint, in which the knee would abruptly buckle out sideways or backwards at an unnatural angle; and
    d) The above would conspire to result in a significant risk of likely future permanent injury.

12. Though, DuShuttle made the recommendations listed above, CMS refused to provide any care whatsoever for some nine months, and Affiant was forced to seek redress in the U.S. District Court for the District of Delaware in order to force CMS to provide the necessary care.

13. CMS's actions, to deny needed care and or create an inordinate delay, were not rooted in any legitimate medical factors, or in any exercise of professional medical judgment. They were actually based in CMS's custom/policy of cost-avoidance.

14. The above is true and correct, and it is based on Affiant's personal observations and experiences.

Sworn and subscribed before me this 25, April 2007.

_____                                              _____
David Williamson, SBI # 183022                                        Notary Public

App. 16

# AFFIDAVIT

I <u>Micheal D. Moore, #00276179</u>, being duly sworn, deposes and says:

I am writing this affidavit on the behalf of Russell Steedley. Russell Steedley and I were taken to see Dr. DuShuttle for evaluation on September 12, 2006. During the evaluation, Dr. DuShuttle told Russell that he definitely needed a complete hip replacement.

The doctor asked Russell how much time he had on his sentence and after Russell told him that he had a lengthy sentence, the doctor told Russell, "You are awfully young to have a hip replacement, and you probably will need the procedure done a second time at a later date." He told Russell that the only way to solve his problem was to have a complete hip replacement.

I, Micheal D. Moore, affirm that these statements are true and I was present when the diagnosis was made.

*[signature: Micheal D. Moore]*

SUBSCRIBED AND SWORN before me this ___8th___ day of __May__, 200_7_

*[signature: Timothy J. Martz]*

Notary
my Commission expires: June 14, 2008

(17)
App. 17