IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RUSSELL STEEDLEY
Plaintiff

V.

CORRECTIONAL MEDICAL SERVICES
GAIL ELLER
UNKNOWN EMPLOYEES AND
CORRECTIONAL MEDICAL SERVICES
REGIONAL
Defendants

Civil Action No. 07-448-***

Jury Trial Demanded



SEP 1 0 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## AMENDED COMPLAINT

The plaintiff Russell Steedley, respectfully requests leave to file Amended complaint. This is a civil rights action brought by Russell E. Steedley, a pro se plaintiff and a state prisoner of Delaware, pursuant to 42 U.S.C. Section 1983 and 1997, requesting declaratory judgment, injunctive relief, and damages. In accordance with Federal Rule of Civil Procedure 15(a). a plaintiff may amend their original complaint for any reason before the defendants file an answer. Mr. Steedley claims herein that defendants committed distinct acts of deliberate indifference to Mr. Steedley's known serious medical needs in violation of his constitutional rights; specifically the Eight and Fourteenth Amendments to the United States Constitution.

## I.   JURISDICTION

1.   This Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. Subsection 1331 and 1343 (a)(3), and supplement jurisdiction over any state law (secondary) tort claims under 28 U.S.C. section 1367 and/or any other applicable statutes.

## II.    VENUE

2.    The District of Delaware is an appropriate venue under 28 U.S.C. section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III.    PARTIES

3.    Plaintiff, Russell E. Steedley, is a state prisoner, incarcerated at the Delaware correctional Center (D.C.C.), Smyrna, Delaware; from June 1990 to present, and during all events described in the instant complaint. Mr. Steedley comes as a pro se friend of the court.

4.    Defendant, Correctional Medical Services Regional (CMS) is a privately held company/corporation that is contracted as an agent of the State of Delaware as it's Health Care Provider for the inmate population within and for all the Department of Correction (DOC) prisons – specifically D.C.C. CMS is responsible for ensuring all facets of medical/health care for prisoners (e.g. timely examinations, diagnostic tests, any appropriate medical, dental, or mental health treatment, and prescriptions); and referral for specialist evaluation or treatment etc. CMS is being sued in its individual and official capacities.

5.    Defendant, Gail Eller is believed to be the on-site director of nursing, however, her exact duties have yet to be discovered. Ms Eller is employed by CMS and is assigned to D.C.C. during the relevant events, in particular, during the grievance process and is believed to be responsible in a direct and supervisory capacity within the D.C.C. Medical Department. Ms. Eller administers CMS policy, custom, and/or corrects, ratifies the behavior of subordinates in accord with the above; and responds to inmate health care needs and complaints (e.g. Medical Grievances). Ms. Eller is being sued in her individual and official capacities.

6.    Defendant(s), unknown CMS employee(s), are believed to be the on-site medical administrator(s), however the exact identities and duties have yet to be discovered. The CMS employee(s) are employed by CMS and are assigned to D.C.C. medical department during the pertinent events, in particular; the medical grievance process and are responsible for the confirmation and approval for any recommended surgical

procedures to be performed on inmates at D.C.C. The employee(s) uphold CMS policies, customs, and practices, and is being sued in their individual and official capacities.

7.    Defendant, Correctional Medical Services, is a local branch for CMS regional and is assigned to D.C.C. during the pertinent events described herein. They administer CMS policy, customs, and practices, and acts as an intermediary between CMS regional and CMS staff and officials for D.C.C.. They are being sued in their individual and official capacities.

8.    All defendants have acted and/or continue to act under the color of State law at all times relevant to this complaint.

## IV.    FACTUAL ALLEGATIONS

9.    Plaintiff began experiencing pain in his right hip and the initial signs of mobility problems in the summer of 1997. Mr. Steedley made a medical appointment that was honored later the same week. Mr. Steedley was prescribed Motrin for relief of his pain.

10.    Plaintiff's hip problems persisted for a year, which prompted him to make another medical appointment. At this medical appointment, Dr. Miller explained to the plaintiff that he had a chronic illness called Osteoarthritis, otherwise known as Degenarative Joint Disease (DJD). Dr. Miller prescribed a non-steroidal Anti-inflammatory drug (NSAID) called "Indocin," and explained to the plaintiff that his condition would continue to deteriorate.

11.    In the spring of 1999, Dr. Miller decided that plaintiff's (DJD) condition should be reviewed by a specialist. Consequently, Dr. Miller would write a referral appointment for plaintiff to be seen by the head physician Dr. Ivens. However, that referral was never honored. Plaintiff was continually treated with one form of (NSAID) drug or another for his (DJD) condition.

12.    On November 13, 2000, after a medical appointment with Dr. Cancino, a CMS physician warned plaintiff of potential medical toxicity from the (NSAID) drugs

when taken over long term treatment, the plaintiff would write to CMS administrators, and Warden Thomas Carroll expressing his concerns. To which RN Robert Hampton of CMS would respond, "...inmate is currently being treated for his chief complaint of degenerative joint disease...that his disease will progress and the medical department will address it accordingly...At this point surgery is not warranted and not recommended."

13. From 2000 to 2004, plaintiff haggles with all contracted health care providers for D.C.C. regarding their chronic care policies; instable and inconsistent drug treatment; deteriorating DJD; and the need for alternative treatment and/or the need to be seen by a specialist, while plaintiff's DJD aggravates.

14. Any layman can easily observe the tangible effects and can discern that plaintiff suffers needlessly from his DJD and that it greatly affects and impairs his normal daily function and/or quality of life and health.

15. In 2005, CMS's physician prescribes a walking cane to plaintiff, in addition to ordering prosthetic knee brace. Plaintiff continues to express his disapproval of treatment and the need to be seen by an orthopedic and/or any medical expert in the field of joint and bone deformities. All requests have been either denied out right or ignored.

16. Plaintiff's cholesterol and blood pressure levels have become elevated since being diagnosed for DJD condition, which has been further aggravated by plaintiff's inability to realize meaningful exercise that poses a likely and significant risk of heart disease or other related coronary problems.

## DEFENDANT'S DELIBERATE INDIFFERENCE

17. In September 2006, plaintiff's pleas to be seen by a specialist (Orothopedic), about his DJD was finally acknowledged and plaintiff was taken to Dr. DuShuttle's office. Dr. DuShuttle reviewed plaintiff's medical records, x-rays, and physically examined plaintiff's right leg. Dr. DuShuttle concluded plaintiff's hip had deteriorated to such an extent as to require surgery. Dr. DuShuttle added that at the

plaintiff's current age, he would more than likely outlive the artificial joint, which would require replacing after 10 or 15 years.

18.    Following the medical visit with Dr. DuShuttle, the plaintiff was then seen by two CMS Physicians (Dr. Durst and Dr. VanDusen), and both concluded that the plaintiff's hip needed repairing or replacing. Both physicians also feared that necrosis in the joint and the long term use of NSAID drugs (which the plaintiff continues to receive to combat severe pain in his hip) would cause further damage. Both physicians expressed the need for an operation but claimed that this call was not theirs. They stated that the final authority of approval lay with CMS administrators, and both agreed that this would be a problem in getting.

19.    Plaintiff was then taken to a Physical Therapist (Ms. Janice Steward), who discontinued the therapy sessions with this comment, "There is nothing we can do for you here. Your situation is too bad and physical therapy is more suited for after you get an operation, because your mobility is terrible." She then went on to prescribe a light training session to help plaintiff's weakened legs, which has serious atrophy setting in.

20.    Plaintiff has been told (by Dr. VanDusen) that CMS required a second opinion from a physical Therapist in order to endorse an operation on limbs. However, when that recommendation was made, CMS Nurse(s) stated that plaintiff was too young for a hip replacement operation and skewed Dr. DuShuttle and Physical Therapist's remarks in an attempt to justify putting off the surgery both had actually endorsed.

21.    After a series of blood tests, in March of 2007, Nurse Practioner Ihuma became extremely alarmed at plaintiff's results. The reviewed results showed that plaintiff's liver and kidney function had deteriorated further. Ms. Ihuma stated that she believed that the long term use of the NSAID drugs, which was given for the plaintiff's DJD condition was the direct cause of the deterioration. Nurse Practioner Ihuma ordered more blood tests. When plaintiff inquired about the status of the operation request, Nurse Practioner Ihuma replied, "Dr. VanDusen's recommendation still had not been approved by CMS Administrators." When the plaintiff asked who these administrators were, Nurse Practioner Ihuma refused to give the names.

22.     Plaintiff then filed a medical grievance (No.#106965) requesting that CMS follow the recommendations and requests given by Dr. DuShuttle, Dr. VanDusen, and Dr. Durst concerning an operation on the plaintiff's right hip.

23.     On April 19, 2007, unknown CMS nurse would deny the initial medical grievance. Plaintiff then appealed the decision to level II of the medical grievance process.

24.     In May 2007, plaintiff was seen by Dr. VanDusen for his DJD condition. Dr. VanDusen then stated that he was troubled as to why the plaintiffs operation had not been approved by CMS Administrators. Dr. VanDusen then stated that he would again submit a request for the operation, but in a more forceful and informative manner. His referral to CMS Administrators stated that he strongly recommend that the plaintiff receive the hip replacement procedure due to fears that necrosis of the joint and the adverse affects of long term use of prescribed NSAID would cause further, undue, damage to plaintiffs vital organs (Hip, Liver, and Kidneys).

25.     June 18, 2007 plaintiff has an appointment with Nurse Practioner Ihuma for the DJD condition. When plaintiff inquires about the status of the request for his hip operation; Nurse Practioner Ihuma informs plaintiff that according to his record, Dr. VanDusen submitted another request to CMS Administrators strongly urging them of the need for an operation. Upon information and belief, it is plain to see that CMS administrators are continuing to stall. At this point Nurse Practioner Ihuma reveals that the latest blood test results show that the plaintiff's kidney functions are diminishing and that she believed this to be the direct result of plaintiff's long term use of NSAID pain relief medication.

26.     Plaintiff writes to Commissioner Carl C. Danberg on June 22, 2007 with the attached affidavits from various inmates supporting claims of inadequate medical treatment at the hands of CMS and that upon information and belief of CMS' cost saving practices, this plaintiff was being denied medical treatment. In addition, plaintiff supplied Mr. Danberg the latest medical warning of kidney problems reported by CMS physicians.

INADEQUATE MEDICAL CARE

27.    On June 26, 2007, Medical grievance at level II is held and chaired by RN Gail
Eller, Director of Nurses for CMS at D.C.C.. RN Eller reviews plaintiff's medical
record, and after a brief exchange of formalities, she explains his grievance is being
denied. She states the reasoning for this is that CMS Administrators need more
information from Dr. VanDusen. Plaintiff expressed his disappointment for that
decision and asked, "What more information does CMS need? You have the
endorsements and recommendations by an Orthopedic Specialist (Dr. DuShuttle), two
CMS physicians; Dr's. VanDusen and Durst, and a Physical Therapist (Ms. Janice
Steward). And you have their recommendations and concerns regarding the operation,
along with their express fears regarding the use of NSAID drugs and their affect upon
the plaintiff's internal organs, as revealed by the latest blood tests results."

28.    When plaintiff asked for the names of the CMS Administrators who are the
policy makers and enforcers of position and authority to deny or confirm plaintiff's
hip operation, RN Eller refused to provide the names or requested information.

29.    Upon information and belief, as a result of CMS's cost saving policies and
practices, and RN Eller's denial and delays, and deliberate indifference to plaintiff's
serious medical needs, plaintiff suffers prolonged and extreme pain and unnecessary
complications that may be irreparable.

EXHAUSTION

30.    Plaintiff has exhausted all available administrative remedies regarding the
matters described in this complain. On April 10, 2007 he filed a medical grievance
asking for the medical procedure to replace his deteriorating right hip. On April 19,
2007 medical grievance meeting with unknown nurse results in a denial of remedy at
level I of grievance, to which an appeal was made regarding grievance to the level II
of grievance procedures and process. On June 26, 2007 Level II medical grievance
process, chaired by Ms. Gail Eller is denied, to which plaintiff then appeals to D.C.C.

Commissioner, Mr. Carl C. Danberg. Attached to this complaint are copies of plaintiff's grievance and appeal.

31.     On July 12, 2007 Commissioner Carl C. Danberg responds to formal letter.

## V.     CAUSES OF ACTION

Plaintiff supports the following claims by reference to the previous paragraphs of this complaint:

### Count I

CMS promulagated policy and custom whether formal or informal that denied plaintiff timely, adequate treatment as recommended by several Medical Experts constituting deliberate indifference to plaintiff's known serious medical needs, based upon non-medical factors and/or no known legitimate factors thus inflicting serious, continuing and irreparable harm to and upon plaintiff.

### Count II

Gail Eller and unknown CMS employee(s) did knowingly employ and acquiesced in the unconstitutional policy/customs listed, with deliberate and callous indifference to plaintiff's known serious medical needs, based upon non-medical factors and/or no known legitimate factors thus inflicting serious, continuing and irreparable harm to and upon plaintiff.

### Count III

CMS for employing and/or ratifying defacto gatekeepers who arbitrarily, capriciously, and with malice: delay or defer necessary medical treatment thus inflicting serious, continuing and irreparable harm to and upon plaintiff.

### Count IV.

CMS promulgated policies and customs, whether formal or informal, that deliberately causes an inordinate delay to necessary and/or prescribed treatment in deliberate indifference to plaintiff's serious medical needs.

## VI.    PRAYER FOR RELIEF

Wherefore, plaintiff respectfully prays that this Court:

1.    Declare that the acts and omissions described herein violated plaintiff's rights under the Constitution and Laws of the United States of America.

2.    Declare that the defendants CMS, Gail Eller, and unknown CMS employee(s) practices  policies or customs of cost avoidance strategies listed above are unconstitutional and non-medical factors, and are the driving force behind the deliberate indifference to plaintiff's known, serious medical needs.

3.    Enter preliminary and permanent injunctions ordering defendants CMS, their successors, agents, employees, and all persons acting in concert with them to immediately schedule and provide plaintiff with:  a) Orthopedic Surgeon to perform a hip replacement procedure, b) and all reasonably necessary recommendations for treatment and rehabilitation, etc, be followed with the aim of making plaintiff whole again.

4.    Enter judgment in favor of the plaintiff for nominal compensory, and punative damages, as followed by law against each defendant, jointly and severally.

5.    Order such additional relief as this Court may deem necessary, just and proper.

Pursuant to 28 U.S.C. Section 1746, I declare and verify under penalty of perjury, under the laws of the United States of America that the foregoing complaint and statement is true and correct, to the best of my ability. Executed on this _____ 4th _____ day of September, 200 7 .

Russell E. Steedley
SBI # 00249572   W-1 Unit
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, Delaware 19977

TO:        Rich Kearney, Bureau Chief for DOC

FROM:    Russell Steedley, inmate

DATE:    April 3, 2007

RE:        Seeking Medical Assistance for Osteoarthritis Condition

Dear Sir:

I was told to seek your assistance by another inmate here at D.C.C., who has benefited from your aid regarding his medical situation. And like that inmate, I feel that I'm being denied adequate medical treatment by the current Health Care Provider solely due to economical purposes. I've been plagued by a debilitating physical condition for over ten years, however the health care providers for this prison refuse to take the appropriate steps to remedy my situation. They rather take the cost saving method, opting for pills over corrective surgery, even after all experts agree that an operation to fix the medical problem is the only answer.

Here's a summary of my current medical situation. I was diagnosed in 1997 as having a chronic medical condition called, Osteoarthritis or degenerative joint disease ("DJD") in my right hip and knee. Since that diagnosis, I've been placed on various painkillers to offset the incessant pain. However, my condition is irreversible and continues to deteriorate to the point where my mobility is severely limited. In addition, the pain engendered from this debilitating condition has forced the physicians to placed me on the strongest types of pain-relievers available, such as Vicadine. These pills along with the others that I've been prescribed all have some form of documented side-affects when taken over a long period of time and they only have limited success in relieving the pain. Most of the physicians here are somewhat apprehensive and reluctant in prescribing such strong pain-reliever like Vicadine due to their addicting nature.

Last September, I was taken out to be seen by an Orthopedic Specialist, Dr. DuShuttle, and he recommended total hip replacement, stating that: "given the condition of your right hip, there's no other viable alternative, despite your relative young age at the moment - 47 years old. Nothing else can be done"

After that appointment, two CMS physicians reviewed my medical record, including my X-rays, along with the recommendation by Dr. DuShuttle and agreed that an operation to replace my right hip is the only answer. Yet they wished to elicit a second opinion and recommendation from a Physical Therapist. In October, I was taken to a Kent General Physical Therapy facility and was seen by one of their experts named, Jonnice Stewart. After a few mobility tests, Ms. Steward also recommended surgery to repair or replace my hip.

However, following that visit and recommendation from the KGH therapist, the CMS medical staff has failed to follow the above listed experts' advice. Instead, I'm being told that they will continue to treat me with the same prescription drugs, despite the recommendations from the two experts and their own medical staff. This is further complicated by the fact that the medication that they are treating me with may be currently adversely affecting my kidney functions, which isn't functioning at 100% according to their latest test.

Sir, I am seeking your assistance in obtaining that operation that all the experts agree that I need at this point. Any further delay will only cause more damage to my health. Any assistance that you can provide in this matter will be greatly appreciated.

Very truly,

Russell Steedley
SBI#00249572, W-1
Delaware Correctional Center

cc:    Keesha West
       File:

Russell Steedley
SBI#00249572, W-1
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

June 22, 2007

Carl Danberg, Commissioner
Bureau of Corrections
Administration Bldg.
245 McKee Rd.
Dover, DE 19904

RE: CMS's Inappropriate Cost Saving Policies

Dear Commissioner Danberg,

I am seeking your assistance concerning my chronic medical condition in which CMS, the contracted health care provider at D.C.C., refuses to provide adequate care. At my last medical appointment, June 18, 2007, I was told by the treating Nurse Practitioner, that CMS's administrators have refused to follow the recommendations offered by their own physicians and that of Dr. DuShuttle, an orthopedic specialist/surgeon. All of the medical experts that have reviewed my case have expressed serious concerns about my Osteoarthritic or Degenerative Joint Disease ("DJD") condition that's in my right hip joint. I was diagnosed with DJD, a chronic condition over ten years ago and have been treated with pain-relief medication ever since.

To date, all of my Grievances have been denied and are awaiting the second level of this process. However, during that last medical appointment I was also told that my latest blood tests revealed that I am already experiencing some negative side-affects from the years of using the prescribed pain-relievers and anti-inflammatory drugs that are directly impacting my kidneys. At that medical appointment, Nurse Practitioner Ihuma, who revealed this information to me, then placed me on another prescription drug specifically to combat those adverse effects that my current prescription has produced. However, this treatment would not be necessary if CMS's administrators gave their approval for the total joint replacement surgery recommended by the above listed physicians.

Dr. Van Dusin has expressed fears that my DJD condition may be necrosis, which means that the injured joint may be dying. If the joint is allowed to die, my leg would have to be amputated or I would die. Additionally, Nurse Practitioner Ihuma stated that if my kidneys are allowed to continue to deteriorate, I might have to be placed on a dialysis machine, which

will be inevitable concerning CMS's current treatment for me. In both cases, the cost saving policies of CMS's are directly contributing to my deteriorating condition and health, which is having a pernicious impact on my life. There has been no plausible medical explanation given as to why CMS's administrators continue to put off the corrective surgery, which would remedy my medical problems.

When you and I met a month ago at the Education Department of D.C.C. you ask that I first exhaust the Grievance process before submitting an appeal to your office. However, with this latest alarming medical information concerning my malfunctioning kidneys, concomitant with Dr. Van Dusin's fears that my DJD condition may develop into necrosis in the damaged joint, I felt the need to bring this to your attention now, because by the time Grievance process reaches fruition, irreparable damage may have set in and it will be too late to act.

Since this medical issue and others similarly related are not isolated and have much history behind it, I will forward to you a copy of some supporting documentations.

Any assistance that your office can provide in this matter will be greatly appreciated. Thanks in advance for your time, patience, and cooperation.

Very truly,

Russell Steedley, Inmate

cc:    Keesha West-Steedley
       Gilbert Steedley
       CMS
       File

DCC **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 04/12/2007

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** STEEDLEY, RUSSELL E | **SBI#** : 00249572 | **Institution** : DCC | |
| **Grievance #** : 106965 | **Grievance Date** : 04/10/2007 | **Category** : Individual | |
| **Status** : Unresolved | **Resolution Status :** | **Resol. Date** : | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 04/10/2007 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier A, Cell 12, Single | | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims: In September 2006, Dr. Dushuttle on orthopedic specialist reviewed my medical records and condition (ortcoarthritis) in my right hip and recommended total hip replacement surgery. Following that recommendation, Dr. Van Dusen also reviewed my case and agreed with Dr. Dushuttle. In January 2007, KGH physical therapist Janice Stewart put me through a battery of mobility tests and concurred with the previous doctors, that the only viable option for my chronic hip condition is surgery. To date that operation is being put off for another medical experts opinion and I am being treated with the same pain relievers that are negatively impacting my kidneys.

**Remedy Requested** : To have CMS follow through with the recommendations made by the orthopedic and physical therapist specialist.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|

## ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** YES                    **Date Received by Medical Unit :** 04/12/2007

**Investigation Sent :** 04/12/2007          **Investigation Sent To** :

**Grievance Amount :**

Russell Steedley
SBI#00249572, W-1
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

June 22, 2007

Carl Danberg, Commissioner
Bureau of Corrections
Administration Bldg.
245 McKee Rd.
Dover, DE 19904

RE: CMS's Inappropriate Cost Saving Policies

Dear Commissioner Danberg,

I am seeking your assistance concerning my chronic medical condition in which CMS, the contracted health care provider at D.C.C., refuses to provide adequate care. At my last medical appointment, June 18, 2007, I was told by the treating Nurse Practitioner, that CMS's administrators have refused to follow the recommendations offered by their own physicians and that of Dr. DuShuttle, an orthopedic specialist/surgeon. All of the medical experts that have reviewed my case have expressed serious concerns about my Osteoarthritic or Degenerative Joint Disease ("DJD") condition that's in my right hip joint. I was diagnosed with DJD, a chronic condition over ten years ago and have been treated with pain-relief medication ever since.

To date, all of my Grievances have been denied and are awaiting the second level of this process. However, during that last medical appointment I was also told that my latest blood tests revealed that I am already experiencing some negative side-affects from the years of using the prescribed pain-relievers and anti-inflammatory drugs that are directly impacting my kidneys. At that medical appointment, Nurse Practitioner Ihuma, who revealed this information to me, then placed me on another prescription drug specifically to combat those adverse effects that my current prescription has produced. However, this treatment would not be necessary if CMS's administrators gave their approval for the total joint replacement surgery recommended by the above listed physicians.

Dr. Van Dusin has expressed fears that my DJD condition may be necrosis, which means that the injured joint may be dying. If the joint is allowed to die, my leg would have to be amputated or I would die. Additionally, Nurse Practitioner Ihuma stated that if my kidneys are allowed to continue to deteriorate, I might have to be placed on a dialysis machine, which

will be inevitable concerning CMS's current treatment for me. In both cases, the cost saving policies of CMS's are directly contributing to my deteriorating condition and health, which is having a pernicious impact on my life. There has been no plausible medical explanation given as to why CMS's administrators continue to put off the corrective surgery, which would remedy my medical problems.

When you and I met a month ago at the Education Department of D.C.C. you ask that I first exhaust the Grievance process before submitting an appeal to your office. However, with this latest alarming medical information concerning my malfunctioning kidneys, concomitant with Dr. Van Dusin's fears that my DJD condition may develop into necrosis in the damaged joint, I felt the need to bring this to your attention now, because by the time Grievance process reaches fruition, irreparable damage may have set in and it will be too late to act.

Since this medical issue and others similarly related are not isolated and have much history behind it, I will forward to you a copy of some supporting documentations.

Any assistance that your office can provide in this matter will be greatly appreciated. Thanks in advance for your time, patience, and cooperation.

Very truly,

Russell Steedley, Inmate

cc:   Keesha West-Steedley
      Gilbert Steedley
      CMS
      File

DCC **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 07/09/2007

## GRIEVANCE INFORMATION - Appeal

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** STEEDLEY, RUSSELL E | **SBI#**    : 00249572 | **Institution**    : DCC |
| **Grievance #**    : 106965 | **Grievance Date** : 04/10/2007 | **Category**    : Individual |
| **Status**    : Unresolved | **Resolution Status :** | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date**    : 04/10/2007 | **Incident Time :** |
| **IGC**    : McCreanor, Michael | **Housing Location :** Bldg W1, Tier H, Cell 13, Single | |

### APPEAL REQUEST

Grievance Hearing Date: June 26, 2007
MGC Decision: Uphold
Grievance Status: Unresolved
Appeal Received: June 27, 2007

I am appealing the Level II decision that states: CMS Administrators are postponing any decision regarding the operation on my hip while awaiting furthter information from Dr. VanDusen because any further delay in moving forward with the surgery to repair my right hip only exacerbates my condition and suffering while in exorably leads to irreversible damage to both my kidneys and right leg. I am currently being treated with Indocin and Vicodin for my osteo-arthritis, which is a chronic condition. Yet, according to CMS' new policy, I'm required to pay for all medical appointments and treatment. THis policy is in direct violation of Delaware law II Section 6536 (b) and (c). In addition, Nurse Practioner Ihoma stated that my kidney problems are a by product of long term use of pain relievers and anti-inflamatory drugs that CMS and all other contracted Health Care Providers have prescribed as treatment for my chronic hip problem.

### REMEDY REQUEST

## Exhibit 19



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
245 McKEE ROAD
DOVER, DE 19904

Carl C. Danberg
Commissioner

(302) 739-5601
Fax:  (302) 739-8221

July 12, 2007

Russell Steedley
SBI#00249572
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Steedley,

I am in receipt of your letter dated June 22nd.

Your letter has been forwarded to Jim Welch, Medical to handle.

Sincerely,

Carl C. Danberg,
Commissioner

Cc:     Jim Welch, Medical
        TK# 307

CCD:lmd

Russell Steedley
SBI#00249572, W-1
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

September 5, 2007

Carl Danberg, Commissioner
Department of Corrections
Administration Bldg.
245 McKee Rd.
Dover, DE 19904

RE: Follow-up to July 12, 2007 letter from Commissioner

Dear Commissioner Danberg:

I submitted a formal letter to you on June 22, 2007, expressing several medical issues that personally affected my health and well-being. In that letter I detailed those acts and policies enacted by CMS which are jeopardizing my health and contributing to my daily suffering. In addition, to said letter, I exercised and exhausted the medical grievance process in an effort to allow CMS staff to address and correct those acts and policies that are contributing to my deteriorating condition. However, my medical grievance was put off indefinitely (essentially amounting to a denial).

Your July 12, 2007, response to my previous letter stated that you had forwarded my letter and medical issues/complains to Jim Welch of Medical, to handle. To date, my medical problems persist, while the potential danger from medical toxicity and necrosis of the joint increases in seriousness with each passing day. CMS has not taken any steps towards resolving this issue other than discontinuing that illegal Chronic Care Clinic (CCC) policy that they introduced and enacted in April or May of 2007.

Sir, my June 22, 2007, letter explicitly spells out the seriousness of my medical situation and CMS's apparent cost saving policies and/or practices that affects the entire population of inmates at D.C.C. So once again I am imploring your office for help in this matter because to allow CMS to continue with their current practices and policies is a breach of Delaware and Constitutional law as outlined in <u>Estelle v. Gamble</u>, 429 U.S. 97, according to the U.S. Supreme Court.

Any assistance that your office can provide in this matter will be greatly appreciated.

Very truly,

Russell Steedley, inmate

cc: file

