IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RUSSELL STEEDLEY, | : | |
| | : | C.A. No. 07-448 |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| CORRECTIONAL MEDICAL | : | |
| SERVICES, INC., GAIL ELLER, | : | |
| UNKNOWN EMPLOYEES and | : | |
| CORRECTIONAL MEDICAL SERVICES | : | |
| REGIONAL, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CORRECTIONAL MEDICAL SERVICES, INC.,
JOHN RUNDLE, AND SCOTT ALTMAN'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed.R.Civ.P 56, Defendants Correctional Medical Services, Inc., John

Rundle, and Scott Altman (collectively, "Movants"), by and through their undersigned counsel

of record, hereby move this Honorable Court for the entry of an order in the form attached hereto

granting judgment in their favor as a matter of law. In support of this Motion, Movants state:

I.      PRELIMINARY STATEMENT

On July 19, 2007, inmate Russell Steedley ("Plaintiff") filed a civil action alleging

violation of civil rights based on what he alleged to be a failure timely to provide a surgical

solution to a degenerative hip condition. Approximately six months later, he was recovering

from that hip replacement surgery. What Plaintiff did not know when he filed his Complaint, his

several amendments, and his Motion for Temporary Restraining Order, was that CMS and its

doctors were already working to have Plaintiff re-evaluated by an orthopedic specialist after

other, more conservative therapies were deemed to have failed. Inmates are never told when

they will be taken outside the prison walls for outside consultation, due to security concerns.

Nonetheless, despite the resolution to his situation, Plaintiff has continued to prosecute this

action alleging deliberate indifference to a serious medical need.  However, the record shows that

CMS and its personnel were anything but indifferent.

II.     NATURE AND STAGE OF THE PROCEEDINGS

    Plaintiff's complaint was filed July 19 2007 (D.I. 2), alleging inadequate medical care

and seeking a total right hip replacement. (*Id.*)  Specifically, Plaintiff alleged that

> "Defendant CMS has been deliberately indifferent to plaintiff's
> need for an operation to replace his severely osteoarthitic hip joint,
> . . .as recommended by several medical experts, including their
> own. . . . Defendant(s) policies and practice ensure that the plaintiff
> is treated with cost-saving drugs that are destroying his internal
> organs, such as his kidney . . . as opposed to following the
> recommendations made by medical experts, which is to have
> plaintiff's total joint replacement operation."

(*Id.*)

    Also on July 19, 2007, Plaintiff filed a Motion for Temporary Restraining

Order/Preliminary Injunction and a Memorandum in support thereof, based on the same facts,

and seeking the same general relief, as the Complaint, i.e., hip replacement surgery. (D.I. 4-6)

    On September 10, 2007, Plaintiff filed a Motion for Leave to File Amended Complaint

(D.I. 12) as well as his Amended Complaint. (D.I. 13) The Amendment did not add substantively

to his claims, but added details regarding medical complaints and treatment going back to 1997.

The Court granted that Motion on September 11, 2007.  (D.I. 14)

    Plaintiff's Amended Complaint provides, in part:

> Defendant(s), unknown CMS employees, are believed to be the
> onsite medical administrator(s), however their exact identities and
> duties have yet to be discovered.  The CMS employees are
> employed by CMS and are assigned to DCC medical department
> during the pertinent events, in particular, the medical grievance
> process and are responsible for the confirmation and approval for

> any recommended surgical procedures to be performed on inmates at DCC. The employee(s) uphold CMS policies, customs and practices, and is being sued in their individual and official capacities. (sic)

(D.I. 13, ¶6)

Plaintiff's Amended Complaint also provides a number of allegations regarding "CMS Administrators". (D.I. 13, ¶¶ 18, 21, 24, 25, 27, 28)

Plaintiff filed a second Amended Complaint on November 14, 2007. (D.I. 20) The second amendment did not add any claims, but identified certain defendants, including John Rundle and Scott Altman. (*Id.*) Defendants assume that Messrs. Rundle and Altman are the "unknown CMS employees" referred to in paragraph 6 of his Amended Complaint, and that they are the "CMS Administrators" to whom Plaintiff's Amended Complaint refers[1].

On November 19, 2007, CMS executed and filed its Waiver of Service. (D.I. 22) On December 11, 2007, CMS filed its Answer to the Amended Complaint as well as its Opposition to Plaintiff's Motion for Temporary Restraining Order. (D.I. 27) Plaintiff filed his Reply to the Opposition on January 2, 2008.

On February 25, 2008, the Court denied Plaintiff's Motion for TRO/PI, finding the Motion moot because the Plaintiff was receiving the medical care he sought in the Motion and in his Complaint, and thus was unlikely to succeed on the merits of his claim. (D.I. 33). Plaintiff's cause of action is for deliberate indifference to a serious medical need, i.e., the failure to provide total hip replacement surgery.

---

[1] If they are not, then Plaintiff's claims against them should be dismissed for failure to state a claim for there are no other allegations in the pleadings that could be construed as being directed against Mr. Rundle or Mr. Altman.

On March 3, 2008, defendants John Rundle and Scott Altman executed and filed Waivers of Service. (D.I. 35, 36)  Their Answers to the Amended Complaint were filed on March 26, 2008. (D.I. 43, 44)

This is the Defendants' Motion for Summary Judgment.

III.    FACTUAL STATEMENT

As stated above, on July 19, 2007, Plaintiff filed his Complaint to initiate the above-captioned action seeking equitable, compensatory and punitive relief.  In his Complaint and the subsequent Amendments, Plaintiff references medical treatment dating back to 1999.  (D.I. 2, 13, 20)  Specifically, Plaintiff alleged that CMS was "deliberately indifferent to plaintiff's need for an operation to replace his severely osteoarthritic hip joint . . ."  (D.I. 2)

Plaintiff's medical records, however, tell a different story.  On July 1, 2005, CMS took over medical care for inmates in the Delaware State Prison System, following the sudden departure of First Correctional Medical, CMS's predecessor.  On July 14, 2005, Plaintiff was seen in Chronic Care Clinic.  (Exhibit "A", medical records at 1-2.  At that time, Plaintiff denied any complaints except mild, sharp pain in his right hip. (*Id.*)  The same day, Plaintiff received a cortisone injection in his right hip.  (*Id.* at 3)  Orders were written to adjust Plaintiff's medication and a note made for follow up visit in three months.  (*Id.* at 4)

On October 2, 2005, Plaintiff submitted a Sick Call Request form. (*Id.* at 5)  The care provider's note, dated October 3, indicated he was already scheduled to be seen.  (*Id.*)  Plaintiff submitted another Sick Call Request form on October 18.  (*Id.* at 6)  Plaintiff was seen and examined on October 24, and scheduled again for Chronic Care Clinic. (*Id.*)

Plaintiff submitted another Sick Call Request on November 9, stating that he was due for a Chronic Care appointment "for review and renewal of current medication."  (*Id.* at 7)    When

Plaintiff was seen in Chronic Care Clinic again on November 11, 2005, he was again examined, blood tests were done, his medications were adjusted and he was scheduled for another hip injection. (*Id.* at 8-9)

Plaintiff was seen again on January 31, 2006.  (*Id.* at 3, 10)  A complete physical exam was performed, medications were adjusted and renewed, and a cane was ordered for Plaintiff. (*Id.* at 8-10)  Plaintiff's chart contains no further Sick Call Request forms until the span of May 4, 2006 to June 6, 2006, when he sent three requests to be seen because he claimed his prescriptions were running low.  (*Id.* at 11-13)  None of these requests indicates any complaint of pain and, in fact, Plaintiff's medications did not run out.  (*Id.* at 14-15).

Plaintiff was seen again on June 12, 2006 in Chronic Care Clinic.  (*Id.* at 16) Again, a complete physical exam was done with lab work and x-rays ordered.  (*Id.* at 17) The physician also ordered an orthopedic consult pending the results of the imaging studies. (*Id.*)   On August 14, Nurse Practitioner Chuks met with Plaintiff and reviewed the x-ray report, which showed joint space narrowing and rheumatoid arthritis with degenerative changes.  (*Id.* at 18-19)  An outpatient consultation was requested (*id.* at 18), and Plaintiff was seen outside the prison in consultation by Dr. DuShuttle on September 12, 2006. (*Id.* at 20-22)  DuShuttle noted: Bilateral hip pain, right worse than left.  Pain with range of motion bilateral hips.  Minimal range of motion.  No groin pain.  Walks with assistance of cane.  No numbness or tingling, no neurological or sensory deficit. (*Id.*)   DuShuttle diagnosed marked degenerative joint disease, bilateral hips.  (*Id.*) The precise language of the doctor's note is as follows:

> I have explained to the patient that his options are to live with his condition as is treating conservatively versus total hip replacements.  I have explained to him that he is young for a total hip replacement.  If he proceeded, it would not last a lifetime.  He would need a repeat total hip replacement, which becomes more difficult.  Surgery is based on pain and should be considered as a

last resort.  There is no guarantee that surgery will help him.  The
patient will return to the office (as needed).

(*Id.* at 22)

Dr. DuShuttle did not recommend total hip replacement surgery on September 12, 2006.

He recommended that the Plaintiff live with his condition for as long as possible and return to his

office as needed.  Based on DuShuttle's examination and consultation, Dr. VanDusen ordered a

consultation and evaluation for physical therapy and home exercise program.  (*Id.* at 18, 23)

On October 3, 2006 Plaintiff was seen again by CMS doctors and his medications

adjusted and re-ordered and another outpatient consultation was written, this time for physical

therapy, to see whether that could help to manage Plaintiff's condition.  (*Id.* at 23-24)  Plaintiff

was seen again in follow up on October 24, 2006, November 21, 2006, and January 18, 2007.

(*Id.* at 25-26) On December 21, 2006, Plaintiff submitted a Sick Call Request for physical

therapy.  (*Id.* at 27)  An appointment was scheduled for Plaintiff to be seen in sick call, but he

failed to show up. (*Id.*)   On January 6 and January 15, 2007, Plaintiff submitted Sick Call

Requests stating that his medications were about to expire and he had not yet had physical

therapy. (*Id.* at 28, 29)  Providers responded, noting that prescriptions were not expired, and

indicating an appointment was scheduled with physicians. (*Id.*)

On February 2, 2007, Plaintiff was taken out to Bayhealth Medical Center for Physical

Therapy.  (*Id.* at 30-32) The physical therapist noted that "he did well with his initial exercises

and was given a copy of a home exercise program to continue."  (*Id.* at 31)  On February 17,

2007, Plaintiff submitted another Sick Call Request stating that his Chronic Care medications

were going to expire.  (*Id.* at 33)  He was seen in Chronic Care follow up on March 2, 2007.  (*Id.*

at 34)  Again, an exam was conducted, medications re-ordered and follow up scheduled.  (*Id.*)

On April 4, 2007, Plaintiff submitted a Sick Call Request stating that his pain medication would soon run out. (*Id.* at 35) The responding care provider indicated that Plaintiff's medications had been re-ordered April 5, and Plaintiff was scheduled with physicians. (*Id.*) On April 5, Plaintiff's Chronic Care chart was reviewed. (*Id.* at 36) Nurse Ott noted that Plaintiff's medications were up to date, and lab work was ordered. (*Id.*)

Plaintiff was seen again in Chronic Care Clinic on May 7, 2007. (*Id.* at 37) He was examined, labs were ordered and medications renewed. (*Id.*) On May 30, 2007, Plaintiff submitted another Sick Call Request stating that he needed to re-order pain medication. (*Id.* at 38) The responding care provider indicated that Plaintiff had just been seen and would need to be seen during his regular visit, which would have been 90 days from May 7. (*Id.*) Nonetheless, Plaintiff was seen again in Chronic Care Clinic on June 18, 2007. (*Id.* at 39) Plaintiff was seen again on July 23, and additional medications, Mobic and ACE, were added to his regimen. (*Id.* at 38-40) Plaintiff was seen again in Chronic Care Clinic on September 14, 2007. (*Id.* at 41) He was examined, and his medications were adjusted and renewed. (*Id.* at 42-43)

Meanwhile, as CMS continued to treat the Plaintiff with medications and regular exams, CMS also continued to monitor his condition and assess the need for surgery. On January 18, 2007, another request for orthopedic consult was written. (*Id.* at 44) On January 23, CMS requested clarification as to whether a physical therapy evaluation had been done, and asked for the most recent x-ray results. (*Id.* at 45) Physical therapy was completed February 2, 2007. (*Id.* at 30-32) The x-rays were completed February 7, 2007. (*Id.* at 46) On August 23, 2007, another request was written for orthopedic consult to evaluate the Plaintiff for a total hip replacement. (*Id.* at 47) That request was approved August 31, 2007. (*Id.*) Plaintiff was seen by Dr. DuShuttle for a second orthopedic consultation on October 2, 2007. (*Id.* at 48-50) Dr.

DuShuttle noted: "There is severe, marked, limited ROM of the right hip. There is a lot of pain with ROM of the right hip. There is a lot of groin pain. The patient ambulates with an antalgic gait. There is pain with ambulation." (*Id.* at 48) His recommendations:

> I explained to the patient, due to the fact that the pain is so severe, I would recommend a total hip replacement for the right hip, based up on pain, even though he is so young. I will make my recommendations to the Department of Corrections and I will await their scheduling.

(*Id.*)

This time, DuShuttle recommended total hip replacement. (*Id.*) The procedure was performed on January 21, 2008. (*Id.* at 50)

IV.     ARGUMENT

A.     The Statute of Limitation Bars any Portion of Plaintiff's Claims Based on Events Occurring Prior to July 19, 2005[2].

Plaintiff's amended complaints reference events beginning in 1997. His initial Complaint was filed July 19, 2007. The statute of limitation for actions such as the Plaintiff's is two years. Accordingly, Plaintiff is barred from bringing any claims based on events prior to July 19, 2005, and any portion of his claims that relate to events prior to July 19, 2005 should be dismissed.

B.     Plaintiff Cannot Establish "Deliberate Indifference"

In order to prevail on his claims, Plaintiff must establish that Mr. Rundle and Mr. Altman were "deliberately indifferent" to a serious medical need (*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and/or that CMS instituted a policy or custom that demonstrates deliberate indifference, and that Mr. Rundle and Mr. Altman furthered such policy or custom. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1979). Plaintiff cannot prevail on either claim, because each

---

[2] In fact, CMS cannot be held liable for any care occurring between June 30, 2002 and July 1, 2005 because it did not hold the state contract for prison health care during that period.

is dependent on Plaintiff establishing "deliberate indifference." The Plaintiff's medical records instead demonstrate that he received appropriate, ongoing, comprehensive medical attention.

>    1.    Neither John Rundle, nor Scott Altman, had any Authority to "Confirm" or "Approve" Surgical Procedures for Inmates

The facts asserted in the Complaint, and the amendments thereto, do not support Plaintiff's claim against either Mr. Rundle or Mr. Altman.  Plaintiff repeatedly alleges that, despite recommendations from treating physicians that he receive hip replacement surgery[3], "CMS Administrators" denied and delayed the procedure.  In his Complaint, he identifies "(U)nknown CMS employee(s) . . . (who) are responsible for the confirmation and approval of any recommended surgical procedures to be performed on inmates at DCC."  (D.I. 13, ¶6) Plaintiff's November 8, 2007 letter to the Court (docketed as "Motion to Amend Complaint") indicates that he has identified John Rundle and Scott Altman as the "unknown CMS employee(s)".  (D.I. 20)  Essentially, Plaintiff is contending that Rundle and Altman somehow negatively affected approval for his hip surgery; however, neither man had the authority to do so and neither man was involved in the process. *See* Exhibit "B", Affidavits of John Rundle and Ronnie Moore.  Because neither man did, or had the ability to, affect a decision regarding the timing of Plaintiff's surgery, neither man can be said to have been "deliberately indifferent" within the context of a 42 U.S.C. § 1983 claim.

In order to state a claim for a violation of civil rights based on medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In order to show "deliberate indifference," a

---

[3] None of which is borne out in the medical records.  There is no statement in the medical records that any doctor recommends hip replacement surgery until Dr. DuShuttle's October 2, 2007 office note.

plaintiff must demonstrate an act or omission and a sufficiently culpable state of mind on the part

of the defendant. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). The plaintiff must also

show personal involvement by the defendant. *Clyne v. Correctional Medical Services*, 2004 WL

502215, *2 (D. Del. 2004) (Exhibit "C") citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d

Cir.1988); *see also Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1979) (*respondeat*

*superior* may not be used in a § 1983 claim).

Plaintiff cannot show "deliberate indifference" on the part of a person who had no

involvement in the process Plaintiff claims violated his civil rights. Logic tells us that one who

has no ability to affect the outcome of a decision, and, with no duty to do so, takes no action to

affect a decision that forms the basis of Plaintiff's claims, cannot be liable. As the *Farmer* court

explained, in the context of a prison conditions claim:

> We hold instead that a prison official cannot be found liable under
> the Eighth Amendment for denying an inmate humane conditions
> of confinement unless the official *knows of and disregards an*
> *excessive risk to inmate health or safety*; *the official must both be*
> *aware of facts from which the inference could be drawn that a*
> *substantial risk of serious harm exists, and he must also draw the*
> *inference*. . . . An act or omission unaccompanied by knowledge of
> a significant risk of harm might well be something society wishes
> to discourage, and if harm does result society might well wish to
> assure compensation. . . . But an official's failure to alleviate a
> significant risk that he should have perceived but did not, while no
> cause for commendation, cannot under our cases be condemned as
> the infliction of punishment.

*Farmer,* 511 U.S. at 837-838 (emphasis supplied).

Thus, to show "deliberate indifference" as developed by *Estelle* and clarified by *Farmer*,

Plaintiff here would have to show that Mr. Rundle and Mr. Altman were aware of Plaintiff's

need for a hip replacement, knew that denying him the hip replacement created a significant risk

to Plaintiff's health, and consciously disregarded that risk in the course and scope of their

employment and were personally involved in the decision to delay or deny. As stated herein,

and within the affidavits submitted in support hereof, these two individuals had no such authority and were not involved in the process of approving or reviewing requests for Plaintiff's hip replacement surgery, and so Plaintiff cannot meet that burden and the claims against Mr. Rundle and Mr. Altman should dismissed.

2.    CMS was not Deliberately Indifferent to any Serious Medical Need

As stated above, CMS can only be liable to Plaintiff if it instituted a policy or custom that demonstrates deliberate indifference. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1979). In this instance, the medical records, and the undisputed facts show that CMS provided extensive care and treatment to Plaintiff and it was not deliberately indifferent to any serious medical need.

Plaintiff has not disputed that he received medical treatment. Instead, he alleges that he did not get the treatment that he wanted – a hip replacement – as soon as he wanted it. He did receive a total right hip replacement surgery on January 21, 2008, but claims he should have gotten it sooner. In fact, CMS and its doctors attempted to treat Plaintiff with conservative measures until the consulting orthopedic surgeon, Dr. DuShuttle, recommended that surgery be performed.

A brief synopsis of the detailed records set forth above tell the story: Plaintiff was seen repeatedly and given treatment for his hip condition. (Exhibit A) He was sent for an orthopedic consult in September 2006. (*Id.* at 18, 20-22) Dr. DuShuttle opined that Plaintiff was a candidate for surgery, but he also recommended first trying physical therapy: "Per MD PT eval & teach HEP – If addt'l visits needed please send notes with request." (*Id.* at 18) In layman's terms, the note indicates that Dr. DuShuttle has recommended that Plaintiff be evaluated by physical therapy and taught a home exercise program. Physical therapy was tried in February 2007, and

11

Plaintiff was given a set of exercises to work on. (*Id.* at 30-32)  Contrary to Plaintiff's assertions that the physical therapist told him "There is nothing we can do for you here" (D.I. 13 ¶19), the Physical Therapy report by Ms. Stewart provides, under the heading "Rehabilitation Potential": "The patient presents with a fair rehabilitation potential" and under "Assessment": "He did well with his initial exercises and was given a copy of home exercises to continue." (Exhibit A at 31)  However, even if Plaintiff were told that physical therapy was not an option that would make no difference to this instant motion as CMS did not press the issue.  Instead, the CMS doctors continued to see him regularly, ordered x-rays and provided medications and began the process of getting a follow up consultation with Dr. DuShuttle, which was held October 2, 2007. (*Id.* at 44-47)  This time, surgery was recommended and performed January 21, 2008.  (*Id.* at 48-50)

Plaintiff alleges that CMS was deliberately indifferent because it did not provide surgical intervention on his time table.  However, Plaintiff is entitled to adequate medical care, not to direct the type of care he receives or when he receives it:

> However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Poole v. Taylor,* 466 F.Supp.2d 578, 589 (D.Del.2006) (citing *Harrison v. Barkley,* 219 F.3d 132, 138-140 (2d Cir.2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle,* 429 U.S. at 107, 97 S.Ct. 285. Moreover, allegations of medical malpractice are not sufficient to establish a constitutional violation. *White v. Napoleon,* 897 F.2d 103, 108-109 (3d Cir.1990); *Spruill v. Gillis,* 372 F.3d at 235. *Mere disagreement as to the appropriate treatment is insufficient to state a constitutional violation. Spruill,* 372 F.3d at 235.

*See Blackston v. Correctional Medical Services, Inc.,* --- F.Supp.2d ----, 2007 WL 2325210 * 3 (D. Del., August 16, 2007) (emphasis supplied) (granting summary judgment in favor of medical provider and against plaintiff/prisoner); accord *Pecoraro v. Correctional Medical Services,* 2007

WL 1560302 at *4 (D.N.J., May 25, 2007)[4] (stating prisoner's subjective dissatisfaction with his dental care, and not a deliberate withholding or delay of treatment as alleged in the Complaint, is not in itself indicative of deliberative indifference) (citing *Andrews v. Camden County,* 95 F.Supp.2d 217, 228 (D.N.J.2000)).

CMS cannot be held liable on a theory of *respondeat superior*, but can only be held responsible where it institutes a policy or custom that demonstrates deliberate indifference. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1979). Plaintiff cannot point to any such policy or custom. He was seen regularly by doctors and nurses. (Exhibit A) He was prescribed medication. (*Id.*) He was sent to Dr. DuShuttle who *eventually* found Plaintiff to be a surgical candidate, but also recommended an attempt at physical therapy and home exercise first. (*Id.* at 18, 22) Those modalities were attempted without success. Plaintiff was re-evaluated and surgery performed. (*Id.* at 48-50)

Plaintiff attempts to argue that Dr. DuShuttle recommended total hip replacement surgery at the first consultation in September 2006. He did not. At that September visit, Dr. DuShuttle opined that Plaintiff was a "candidate" for the surgery but he did not recommend it until Plaintiff's second office visit in October 2007. A comparison of the office notes from those two visits supports these facts. In September 2006 Dr. DuShuttle wrote:

> I have explained to the patient that his options are to live with his condition as is treating conservatively versus total hip replacements. I have explained to him that he is young for a total hip replacement. If he proceeded, it would not last a lifetime. He would need a repeat total hip replacement, which becomes more difficult. Surgery is based on pain and should be considered as a last resort. There is no guarantee that surgery will help him. The patient will return to the office (as needed).

(Exhibit A at 22)

---

[4] All unreported decisions are included as Exhibit C.

In contrast, in October 2007 Dr. DuShuttle wrote unequivocally that he now recommended the surgery:

> I explained to the patient, due to the fact that the pain is so severe, I would recommend a total hip replacement for the right hip, based up on pain, even though he is so young. I will make my recommendations to the Department of Corrections and I will await their scheduling.

(*Id.* at 48)

The reason for Dr. DuShuttle's change of opinion is contained in his respective recitations of the Plaintiff's conditions. In 2006: "The patient ambulates with the assistance of a cane. Minimal and painful range of motion of the bilateral hips although the patient denies groin pain." (*Id.* at 22) In 2007: "There is severe, marked, limited ROM of the right hip. There is a lot of pain with ROM of the right hip. There is a lot of groin pain. The patient ambulates with an antalgic gait. There is pain with ambulation." (*Id.* at 48) In September, 2006, Plaintiff was told that he was a candidate, but that he was young for a total hip replacement, that the surgery was a "last resort" and that he would wait as long as possible. The doctor noted that Plaintiff would return to his office "as needed." (*Id.* at 22) Additional conservative measures were recommended and attempted, without success. When there was no other choice, Dr. DuShuttle finally did recommend total hip replacement surgery, which was done within three months. CMS was not deliberately indifferent to Plaintiff's condition.

VI.    CONCLUSION

WHEREFORE, for the foregoing reasons, defendants Correctional Medical Services, Inc., John Rundle and Scott Altman respectfully request the entry of judgment in their favor as a matter of law.

BALICK & BALICK, LLC


_____/s/ James E. Drnec_____
James E. Drnec, Esquire (#3789)
711 King Street
Wilmington, Delaware 19801
302.658.4265
Attorneys for Defendants
Correctional Medical Services, Inc.,
John Rundle and Scott Altman

Date:   May 28, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RUSSELL STEEDLEY,                           :
                                            :        C.A. No. 07-448
            Plaintiff,                      :        JURY TRIAL DEMANDED
                                            :
v.                                          :
                                            :
CORRECTIONAL MEDICAL                        :
SERVICES, INC., GAIL ELLER,                 :
UNKNOWN EMPLOYEES and                       :
CORRECTIONAL MEDICAL SERVICES               :
REGIONAL,                                   :
                                            :
            Defendants.                     :

### ORDER

        AND NOW, this _____ day of _____, 2008, the Court having considered

Defendants Correctional Medical Services, Inc., John Rundle, and Scott Altman's Motion

for Summary Judgment and all opposition thereto, it is hereby ordered that the Motion is

GRANTED.  All claims in the above-captioned action are dismissed with prejudice.


                        _____
                                    J.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RUSSELL STEEDLEY,                          :

          Plaintiff,                 :        C.A. No. 07-448
                                    :        JURY TRIAL DEMANDED

v.                                         :

                                    :

CORRECTIONAL MEDICAL                       :
SERVICES, INC., GAIL ELLER,                :
UNKNOWN EMPLOYEES and                      :
CORRECTIONAL MEDICAL SERVICES              :
REGIONAL,                                  :
                                    :

          Defendants.                :

## AFFIDAVIT OF RONNIE MOORE IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

STATE OF DELAWARE       )
                           )
COUNTY OF KENT         )

      I, Ronnie Moore, being duly sworn, hereby aver as follows:

1.    I am over the age of 18 and competent to make this affidavit.

2.    I am employed by Correctional Medical Services, Inc. ("CMS") as Health Services Administrator at Delaware Correctional Center.

3.    Neither the Quality Assurance Manager, nor the Health Services Administrator has the authority or ability to approve or deny surgical procedures for inmates.

4.    During their respective tenures as Quality Assurance Manager and Health Services Administrator, neither Scott Altman nor John Rundle had the authority or ability to approve or deny surgical procedures for inmates.

FURTHER THE AFFIANT SAYETH NOT

_____       _____
Witness -- Notary                      Ronnie Moore
My commission expires:

CHRISTINE S. KEMP
COMMISSION
EXPIRES
MAY 23, 2009
NOTARY PUBLIC
STATE OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RUSSELL STEEDLEY, | : | C.A. No. 07-448 |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| v. | : | |
| CORRECTIONAL MEDICAL SERVICES, INC., GAIL ELLER, UNKNOWN EMPLOYEES and CORRECTIONAL MEDICAL SERVICES REGIONAL, | : | |
| Defendants. | : | |

AFFIDAVIT OF JOHN RUNDLE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

STATE OF DELAWARE    )
                     )
COUNTY OF NEW CASTLE )

I, John Rundle, being duly sworn hereby aver as follows:

1.    I am over the age of 18 and competent to make this affidavit.

2.    I was employed from June 2006 to July 2007 by Correctional Medical Services, Inc. as Health Services Administrator ("HSA") at the Delaware Correctional Center. ("DCC")

3.    As HSA at DCC, I had no authority to approve or deny surgical procedures for inmates.

FURTHER THE AFFIANT SAYETH NOT

_____
John Rundle

_____
Witness -- Notary
My commission expires: 26 April 2010

# Exhibit C

United States District Court,
D. Delaware.
John CLYNE, Plaintiff,
v.
CORRECTIONAL MEDICAL SERVICES, et al., Defendants.
No. Civ.A. 01-684-KAJ.
March 8, 2004.

John P. Clyne, Jr., SBI # 237099, Multi-Purpose Criminal Justice Facility, Wilmington, Delaware, plaintiff pro se.

Kevin J. Connors, Marshall, Dennehy, Warner, Coleman & Goggin, Wilmington, Delaware, for defendants Correctional Medical Services and Jeannie Long.

Richard W. Hubbard, Department of Justice, State of Delaware, Wilmington, Delaware, for defendants Bradley A. Lee, Raphael Williams, and Stanley Taylor.

MEMORANDUM OPINION

JORDAN, J.

I. INTRODUCTION

*1 Presently before me is a Motion to Dismiss filed by defendants Bradley A. Lee, a facility investigator at the Multi-Purpose Criminal Justice Facility ("MPCJF") in Wilmington, Delaware, Raphael Williams, the MPCJF warden, and Stanley Taylor, the Commissioner of the Department of Corrections (collectively, the "State Defendants") (Docket Item ["D.I."] 13). Also before me is a Motion to Dismiss filed by defendant Correctional Medical Services ("CMS"), a corporation which provides medical services and treatment to inmates housed in correctional facilities in the State of Delaware.[FN1] (D.I.26.) Plaintiff John P. Clyne, Jr. ("Clyne"), an inmate at the MPCJF, brought this action under 42 U.S.C. § 1983 alleging violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and state law claims for negligence and medical malpractice. (D.I.2.) Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. For the reasons that follow, both Motions to Dismiss will be granted.

FN1. Plaintiff also named Jeannie Long, a registered nurse employed by CMS at the MPCJF, as a defendant in this case. To date, Ms. Long has not filed any dispositive motions.

II. BACKGROUND

For the past ten years, Plaintiff has suffered from alcohol dependence and clinical depression. (D.I. 2 at ¶ 12, 15.) From April 20, 2001 to July 2, 2001, while incarcerated at the MPCJF, Plaintiff was taking Paxil, an anti-depressant, prescribed to him by a CMS psychiatrist. ( Id. at ¶ 18.) On July 3, 2001, Plaintiff was released from the MPCJF to Level 3 probation. ( Id. at ¶ 20 .) Plaintiff was not given any medication to take with him upon his release. ( Id. at ¶ 21.)

Plaintiff began drinking again after his release, and on July 10, 2001, he was arrested by the Wilmington Police for driving under the influence, and was later charged with violation of his probation. ( Id. at ¶ 24, 25.) Due to these charges, Plaintiff was again

incarcerated at the MPCJF. ( *Id.*) Upon readmission, Plaintiff experienced severe alcohol withdrawal symptoms. ( *Id.* at ¶ 36.)

On July 18, 2001, Plaintiff attempted to escape from custody after an appearance at a courthouse in Wilmington. ( *Id.* at ¶ 39.) After this incident, defendant Lee issued an order placing Plaintiff on administrative segregation at the MPCJF. ( *Id.* at ¶ 46.) Plaintiff also met with Dr. Joshi, a CMS psychiatrist, who prescribed him the medications Paxil and Trazadone, for insomnia. ( *Id.* at ¶ 48.) After three days in the infirmary, Plaintiff was transferred back into the general prison population. ( *Id.* at ¶ 49.) On July 23, 2001, Plaintiff was transferred to an isolation "pod," or cell, where he remained for 16 days. ( *Id.* at ¶¶ 53, 68.)

During this time, Plaintiff spent one night in a cell with an inmate he characterized as "angry and volatile," and he was afraid to sleep that night. ( *Id.* at ¶¶ 56-60.) On August 4, 2001, Plaintiff did not receive his medication because the entire isolation wing of the MPCJF was placed in lockdown for security reasons. ( *Id.* at ¶¶ 63-67.) As a result, Plaintiff experienced some tremors in his extremities. ( *Id.*) Plaintiff returned to the general prison population on August 8, 2001. ( *Id.* at ¶ 73.) He did not receive his medication on August 8 and 9, 2001. ( *Id.* at ¶ 76.)

**\*2** Plaintiff requests a declaratory judgment that all defendants have violated, and continue to violate, his rights under the Eighth and Fourteenth Amendments by failing to provide adequate medical care and for transferring him to administrative segregation without a hearing. Plaintiff also requests compensatory and punitive damages, to be assessed jointly and severally against all defendants.


III. STANDARD OF REVIEW
In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322 (1972) ( *per curiam* ). This is especially true where, as here, the complaint is filed *pro se. Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (citations omitted). A *pro se* complaint can only be dismissed for failure to state a claim if it appears "beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). However, broad, unsupported allegations do not preclude dismissal and do not constitute a cause of action. *Signore v. City of McKeesport,* 680 F.Supp. 200, 203 (W.D.Pa.1988), *aff'd,* 877 F.2d 54 (3d Cir.1989).


IV. DISCUSSION

1. State Defendants' Motion to Dismiss
Plaintiff argues that Lee purposefully interfered with his medical treatment when he ordered Plaintiff to administrative segregation, and that Lee also violated Plaintiff's right to due process because the transfer occurred without a hearing. Plaintiff further argues that Williams and Taylor are responsible for Lee's conduct and therefore liable under the doctrine of *respondeat superior.* State Defendants argue that Plaintiff's complaint does not set forth sufficient facts to sustain his claim that they acted with deliberate indifference to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment or to sustain his claim that his due process rights under the Fourteenth Amendment have been violated.[FN2] (D.I. 13 at 4.)

FN2. Plaintiff states that, from June 19, 2001 to July 3, 2001, and from July 10, 2001 to the time he filed his complaint on September 28, 2001, he was a pre-trial detainee. (D.I.

2 ¶ 3.) However, medical issues for pre-trial detainees are controlled by the same "deliberate indifference" standard that applies to sentenced inmates. See _Estelle v. Gamble,_ 429 U.S. 97, 104 (1976); _Boring v. Kozakiewicz,_ 833 F.2d 468, 472 (3d Icr.1987), _cert. denied,_ 485 U.S. 991 (1988).

In order to state a claim based on lack of adequate medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See _Estelle v. Gamble,_ 429 U.S. 97, 104 (1976). To show "deliberate indifference," a plaintiff must **demonstrate** a **sufficiently culpable state** of **mind** on the part of the defendant. See, e.g., _Farmer v. Brennan,_ 511 U.S. 825, 828 (1994). The plaintiff must also show personal involvement by the defendant. _Rode v. Dellarciprete,_ 845 F.2d 1195, 1207 (3d Cir.1988); _see also Monell v. Dep't of Social Services,_ 436 U.S. 658, 694 (1979) ( _respondeat superior_ may not be used in a § 1983 claim).

The basis of Plaintiff's Eighth Amendment claim against Lee is that, as a result of Plaintiff's transfer to administrative segregation, Plaintiff did not receive his medication on August 4, 2001. This is not an act or omission that is sufficiently harmful to prove deliberate indifference to Plaintiff's medical needs. Plaintiff has not alleged any facts to prove that Lee purposefully withheld Plaintiff's medication; rather, Plaintiff's complaint reflects that the entire isolation ward was locked down for security reasons on August 4, 2001, which is why Plaintiff did not receive his medication on that day. These facts cannot support a viable cause of action under the Eighth Amendment for inadequate medical care, and Plaintiff's claims against Lee under the Eighth Amendment will be dismissed.

**\*3** Plaintiff claims that his Fourteenth Amendment right to due process was violated when Lee transferred him to administrative segregation without a hearing. In order to prove a violation of the Due Process Clause, Plaintiff must show that (1) a constitutionally protected liberty or property interest is at issue and (2) if so, that the state did not give him notice or an opportunity to be heard prior to depriving him of that protected interest. _Board of Regents v. Roth,_ 408 U.S. 564, 569 (1972). Under the Due Process Clause, a prisoner does not have a liberty interest in remaining in the general prison population,[FN3] _see McKune v. Lile,_ 536 U.S. 24, 33 (2002) (citation omitted), and, in this case, Lee's decision to transfer Plaintiff to administrative segregation was reasonably related to the goal of maintaining institutional security, given Plaintiff's escape attempt on July 18, 2001, _see Turner v. Safley,_ 482 U.S. 78, 89 (1987); _O'Lone v. Estate of Shabazz,_ 482 U.S. 342, 348 (1987). Because Plaintiff does not have a constitutionally protected liberty interest at issue, his claims against Lee under the Fourteenth Amendment will be dismissed.

FN3. Nor does Delaware state law create a liberty interest in a prisoner remaining in the general prison population. _Brown v. Cunningham,_ 730 F.Supp. 612, 614 (D.Del.1990) (discussing statutory provision 11 Del. C. § 6535 regarding placement of Delaware prisoners in segregation).

As to Taylor and Williams, the law is clear that the doctrine of _respondeat superior_ is inapplicable to claims brought under 42 U .S.C. § 1983. _Monell,_ 436 U.S. at 694. Plaintiff has not alleged any affirmative conduct on the part of Taylor and Williams that would subject them to liability, and therefore all of Plaintiff's claims against them will be dismissed. _Id.; see also Rode v. Dellarciprete,_ 845 F.2d 1195, 1207 (3d Cir.1988).

2. CMS's Motion to Dismiss
Plaintiff argues that CMS failed to supply adequate personnel and professional staff and services to efficiently meet his medical needs and to respond to his requests for

medication between July 10, 2001 and July 18, 2001. Plaintiff also claims that CMS breached its duty of care by failing to provide medical care for him when he was released from the MPCJF on July 3, 2001. Finally, plaintiff argues that CMS is liable for the actions of its employees under the doctrine of *respondeat superior.*

As to CMS, private corporations that provide medical services at prisons cannot simply be held liable under a theory of *respondeat superior* without a showing of any personal involvement. *Rode,* 845 F.2d at 1207, *Swan v. Daniels,* 923 F.Supp. 626, 633 (D.Del.1995). Personal involvement is shown through allegations of personal direction or of actual knowledge and acquiescence of an employee's actions by someone of authority within a corporation. *Id.* Clyne has failed to allege any personal involvement by CMS, in the form of personal direction or of actual knowledge and acquiescence, concerning his alleged inadequate medical treatment. Finding no connection between CMS and Clyne's complaint, CMS's Motion to Dismiss will be granted.

As all of Plaintiff's federal claims against State Defendants and CMS have been dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995).

V. CONCLUSION
*4* For the reasons set forth, the State Defendants' Motion to Dismiss (D.I.13) will be granted and CMS's Motion to Dismiss will be granted (D.I.26). An appropriate order will issue.

*ORDER*

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that the Motion to Dismiss filed by defendants Bradley A. Lee, Raphael Williams, and Stanley Taylor (D.I.13) is GRANTED and the Motion to Dismiss filed by defendant Correctional Medical Services (D.I.26) is GRANTED.

D.Del.,2004.
Clyne v. Correctional Medical Services
Not Reported in F.Supp.2d, 2004 WL 502215 (D.Del.)

United States District Court,
D. New Jersey.
Joseph PECORARO, Plaintiff,
v.
CORRECTIONAL MEDICAL SERVICES, et al., Defendants.
Civil Action No. 07-2338 (RMB).
May 25, 2007.

Joseph Pecoraro, Leesburg, NJ, Plaintiff pro se.


# OPINION


BUMB, District Judge.

*1 Plaintiff Joseph Pecoraro ("Pecoraro"), currently confined at the Bayside State Prison in Leesburg, New Jersey, seeks to bring this action *in forma pauperis* pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in *forma pauperis* pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed.


## I. *BACKGROUND*

Pecoraro brings this civil rights action against defendants, Correctional Medical Services ("CMS") and CMS Department Head at Bayside State Prison ("BSP"), B. Eckman. (Complaint, Caption and ¶¶ 5b, c). The following factual allegations by plaintiff are taken from the Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

In March 2007, Pecoraro went to a dentist at BSP for treatment of pain in his four teeth. He was told that his teeth needed to be extracted. The dentist attempted to extract Pecoraro's teeth, but plaintiff was in too much pain. Pecoraro was told that he would need to see an oral surgeon, and the earliest appointment would be no sooner than June 2007. In the interim, Pecoraro was prescribed "Tylenol 3" and Motrin for pain. Pecoraro claims that the medication does not relieve his pain, and that he has received inadequate care. (Compl., ¶ 9).

Pecoraro seeks compensatory and punitive damages for pain and suffering and infliction of emotional distress. (Compl., "Relief Requested").


## II. *STANDARDS FOR A SUA SPONTE DISMISSAL*

The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in *forma pauperis* or seeks redress against

a governmental employee or entity. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997). The Court need not, however, credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.*

**\*2** A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. *Deutsch v. United States,* 67 F.3d 1080, 1086-87 (3d Cir.1995).

A *pro se* complaint may be dismissed for failure to state a claim only if it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Haines,* 404 U.S. at 521 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Milhouse v. Carlson,* 652 F .2d 371, 373 (3d Cir.1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Denton v.. Hernandez,* 504 U.S. 25, 34 (1992); *Alston v. Parker,* 363 F.3d 229 (3d Cir.2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); *Grayson v. Mayview State Hospital,* 293 F.3d 103, 108 (3d Cir.2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); *Shane v. Fauver,* 213 F.3d 113, 116-17 (3d Cir.2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); *Urrutia v. Harrisburg County Police Dept .,* 91 F.3d 451, 453 (3d Cir.1996).

## III. *SECTION 1983 ACTIONS*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution. Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255-56 (3d Cir.1994).

Moreover, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or

of actual knowledge and acquiescence." *Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)* (citations omitted). *Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir.1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir.1995).*

IV. *ANALYSIS*

*\*3* In his Complaint, Pecoraro alleges that defendants CMS and Eckman have denied prescribed **dental** care for the treatment and extraction of plaintiff's teeth.

The **Eighth Amendment** proscription against cruel and unusual punishment requires that prison officials provide inmates with **adequate medical** care. *Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir.1999).* In order to set forth a cognizable claim for a violation of his right to **adequate medical** care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes **deliberate indifference** to that need. *Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir.2003).*

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, **deliberate indifference** to medical needs amounts to an **Eighth Amendment** violation only if those needs are 'serious.' " *Hudson v. McMillian, 503 U.S. 1, 9 (1992).* The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir.2003)* (internal quotations and citations omitted); *see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).*

The second element of the *Estelle* test requires an inmate to show that prison officials acted with **deliberate indifference** to his serious medical need. *See Natale, 318 F.3d at 582* (finding **deliberate indifference** requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "**Deliberate indifference**" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).* Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate **deliberate indifference**. *Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J.2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D.Md.1982), aff'd, 729 F.2d 1453 (4th Cir.1984).* Similarly, "mere disagreements over medical judgment do not state **Eighth Amendment** claims." *White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990).* "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979)* (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an **Eighth Amendment** violation. *Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.*

*\*4* The Third Circuit has found **deliberate indifference** where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse, 182 F.3d at 197.* The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the **Eighth Amendment**. *Atkinson,*

316 F.3d at 266. *See also Monmouth County Correctional Institutional Inmates,* 834 F.2d at 346 ("**deliberate indifference** is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); *Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir.1993); *White v. Napoleon,* 897 F.2d 103 (3d Cir.1990).

Here, Pecoraro alleges that he has been denied recommended oral surgery and more effective pain medication for his teeth. Pecoraro admits that he was seen by a dentist in March 2007, and that the dentist attempted to extract plaintiff's teeth, but could not due to plaintiff's pain. Pecoraro further admits that he was given pain medication and was told that he needed to have an oral surgeon perform the extraction. However, an oral surgeon would not be available until June 2007, several months away.

Based on these allegations, the Court finds that Pecoraro might be able to support a claim of serious medical need, if, in fact, he can show that oral surgery for his condition was prescribed by doctors. However, Pecoraro has not demonstrated the second prong necessary to establish a denial of medical care claim-he has not shown **deliberate indifference** by the defendants, CMS and Eckman.

Pecoraro admits that he has received **dental** care in March 2007, and that he has been given pain medication. He also concedes that oral surgery was offered, but not as quickly as he wants it. Thus, based on these facts, as confirmed by plaintiff's allegations in to his Complaint, Pecoraro cannot show that defendants have intentionally refused to provide the recommended **dental** care. Nor can he demonstrate that defendants delayed **dental** care for non-medical reasons. Rather, it is the unavailability of the oral surgeon until June 2007, a matter of several months, that displeases plaintiff. Finally, Pecoraro has not shown that defendants have actually prevented him from receiving recommended **dental** treatment. *See Rouse,* 182 F.3d at 197. Pecoraro admittedly has been prescribed pain medication, but the type of medication is not to his satisfaction. The dentist also attempted to extract the painful teeth, but plaintiff's discomfort terminated that effort, allegedly making oral surgery necessary and plaintiff is now awaiting that surgery. Therefore, it is only Pecoraro's subjective dissatisfaction with his **dental** care, and not a deliberate withholding or delay of treatment alleged in the Complaint, which is not in itself indicative of **deliberate indifference**. *See Andrews,* 95 F.Supp.2d at 228.

*\*5* Accordingly, this Court finds no **deliberate indifference** by defendants to plaintiff's serious medical need on the facts alleged by plaintiff at this time that would rise to the level of an actionable violation of constitutional dimension under 42 U.S.C. § 1983. Accordingly, the Complaint will be dismissed without prejudice to plaintiff filing a new action pleading facts sufficient to support a claim of **deliberate indifference** as set forth above.

## V. CONCLUSION

For the reasons stated above, the Court will dismiss the Complaint, in its entirety, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). An appropriate Order follows.

United States District Court,
D. Delaware.
Richard I. BLACKSTON, Plaintiff,
v.
CORRECTIONAL MEDICAL SERVICES, INC., Defendant.
Civ No. 06-448-SLR.
Aug. 16, 2007.

Background: Inmate brought action against correctional medical services company, alleging Eighth Amendment violations due to inadequate dental care. Company moved for summary judgment.

Holding: The District Court, Robinson, J., held that company did not exhibit deliberate indifference to inmate's serious medical needs.

Motion granted.

[1] KeyCite Notes 

  350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
        350Hk1546 k. Medical Care and Treatment. Most Cited Cases

In order to set forth cognizable Eighth Amendment claim, inmate must allege: (1) serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. U.S.C.A. Const.Amend. 8.

[2] KeyCite Notes 

  350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
        350Hk1546 k. Medical Care and Treatment. Most Cited Cases

Prison official is "deliberately indifferent" to serious medical need if he knows that prisoner faces substantial risk of serious harm and fails to take reasonable steps to avoid harm. U.S.C.A. Const.Amend. 8.

[3] KeyCite Notes 

  350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement

350Hk1546 k. Medical Care and Treatment. Most Cited Cases

Prison official may manifest deliberate indifference to serious medical need by intentionally denying or delaying prisoner's access to medical care. U.S.C.A. Const.Amend. 8.

[4] KeyCite Notes  KC

    350H Sentencing and Punishment
      350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
        350Hk1546 k. Medical Care and Treatment. Most Cited Cases

Prisoner has no Eighth Amendment right to choose specific form of medical treatment, so long as treatment provided is reasonable. U.S.C.A. Const.Amend. 8.

[5] KeyCite Notes  KC

    350H Sentencing and Punishment
      350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
        350Hk1546 k. Medical Care and Treatment. Most Cited Cases

Inmate's Eighth Amendment claims against members of prison medical department are not viable under § 1983 where inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on inmate's behalf. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

[6] KeyCite Notes  KC

    350H Sentencing and Punishment
      350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
        350Hk1546 k. Medical Care and Treatment. Most Cited Cases

Inmate's allegations of medical malpractice are not sufficient to establish Eighth Amendment violation. U.S.C.A. Const.Amend. 8.

[7] KeyCite Notes  KC

    350H Sentencing and Punishment

350HVII Cruel and Unusual Punishment in General
  350HVII(H) Conditions of Confinement
    350Hk1546 k. Medical Care and Treatment. Most Cited Cases

Inmate's mere disagreement as to appropriate medical treatment is insufficient to state
Eighth Amendment violation. U.S.C.A. Const.Amend. 8.


[8] KeyCite Notes

  350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
        350Hk1546 k. Medical Care and Treatment. Most Cited Cases

Inmate who sued correctional medical services company, alleging inadequate dental care
following tooth extractions, failed to establish that company exhibited deliberate
indifference to his serious medical needs, as required to maintain Eighth Amendment
claim; inmate's medical records established that he had received dental examinations and
treatments to resolve routine problems as well as emergency concerns. U.S.C.A.
Const.Amend. 8.


Richard I. Blackston, Pro se Plaintiff.

Eric Scott Thompson, Esquire, of Marshall, Dennehey, Warner, Coleman & Goggin,
Wilmington, DE, for Defendant.

MEMORANDUM OPINION


ROBINSON, District Judge.
I. INTRODUCTION

*1 Plaintiff Richard I. Blackston filed this 42 U.S.C. § 1983 action alleging that
defendant Correctional Medical Services, Inc. ("CMS") provided inadequate dental care
in violation of the Eighth Amendment. (D.I.2) Defendant CMS has moved for summary
judgment.FN1 (D.I.11) Although afforded ample opportunity and notice, plaintiff has not
filed responsive papers. (D.I.14, 15) For the reasons that follow, defendant's motion will
be granted.

II. BACKGROUND

In April 2006, while incarcerated at the Howard Young Correctional Institution, plaintiff
had two molar teeth extracted. (D.I. 2; D.I. 12, ex. 4) During the extraction process,
plaintiff informed the treating dentist that he was experiencing severe pain in his front,
left tooth ("front tooth"), apparently because of a cavity. According to plaintiff, the

dentist advised that there was "an unwritten policy prohibit[ing] any fillings from being placed in inmates' teeth without the inmate having at least 6 months served inside of the facility." (D.I. 2 at ¶ 2) Plaintiff's request to examine the policy was denied.

In May 2006, plaintiff filed an inmate grievance and request for proper care of his front tooth with the "Commissioner of Corrections." FN2 ( Id. at ¶ 3; D.I. 12, exs. 2, 4) Because his front tooth pain was severe, plaintiff requested emergency dental treatment. (D.I.12, ex. 4) Plaintiff informs that the grievance was returned to the Inmate Grievance Committee without a hearing; however, a dental appointment was scheduled. ( Id.)

In June 2006, plaintiff filed a second grievance with Warden Raphael Williams. Plaintiff was advised that the Inmate Grievance Committee found his complaint was non-grievable. ( Id. at ¶ 7) Plaintiff submitted a third grievance to the Department of Correction Bureau Chief. Although he did not receive a response to the grievance, plaintiff was scheduled for another dental appointment.

During a July 12, 2006 dental appointment, plaintiff's bottom left molar was removed. An informed consent for the extraction of his tooth form bearing plaintiff's signature was dated July 12, 2006. (D.I.12, ex. 4) After complaining that his front tooth problems were not addressed, plaintiff was told this would be treated at a later time. (D.I. 2 ¶ 11) On July 13, 2006, plaintiff informed the deputy warden of his dental problems. ( Id. at ¶ 12)

Medical records reflect that during the next few months, plaintiff received additional dental treatment. (D.I.12, exs.2, 4) Four of his teeth were extracted, with his consent, in November 2006. As a result, plaintiff did not have any remaining top teeth. Fabrication of dentures was scheduled to commence in January 2007. (D.I.12, ex. 4)

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Kaucher v. County of Bucks, 455 F.3d 418 (3d Cir.2006).

*2 "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa.

Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant asserts that summary judgment is warranted because plaintiff failed to exhaust his administrative remedies before filing this action as mandated by the Prison Litigation Reform Act ("PLRA").FN3 (D.I.11) Although plaintiff claims to have filed three grievances, defendant submits that he failed to file an appeal on any decision rendered. (D.I.11) Defendant also notes that plaintiff signed off on two grievances. (D.I.12, ex. 2)

Under the PLRA, exhaustion is mandatory and prisoners must exhaust administrative remedies for any claim that arises within the prison, regardless of any limitations on the kind of relief available through the grievance process, before filing suit in federal court. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The purpose of the exhaustion requirement is "(1)to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir.2004).

The United States Supreme Court has concluded that exhaustion means proper exhaustion, e.g., "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, ---U.S. ----, ----, 126 S.Ct. 2378, 2384, 165 L.Ed.2d 368 (2006). The Third Circuit has stated that, the "determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials." Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir.2004).

*3 Failure to substantially comply with requirements of the grievance system may result in a procedural default of that claim. Id. at 227-32. "Defendants must plead and prove failure to exhaust as an affirmative defense." It must be pleaded and proven by defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir.2002); Brown v. Croak 312 F.3d 109, 111 (3d Cir.2002).

The record reflects that plaintiff filed grievances regarding his dental care; however, what transpired after the grievances were filed is not clear. While there are references to two grievances to which plaintiff "signed off", neither party has provided copies of the grievances nor information reflecting the outcome of any hearings or actions taken. For this reason, the court will deem the administrative remedies exhausted and will review the merits of plaintiff's claim.

B. Eighth Amendment Claim

[1] [2] [3] The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order to set forth a cognizable claim, an inmate must allege (I) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Id. at 104, 97 S.Ct. 285; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-105, 97 S.Ct. 285.

[4] [5] [6] [7] However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. Poole v. Taylor, 466 F.Supp.2d 578, 589 (D.Del.2006) (citing Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir.2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. Estelle, 429 U.S. at 107, 97 S.Ct. 285. Moreover, allegations of medical malpractice are not sufficient to establish a constitutional violation. White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir.1990); Spruill v. Gillis, 372 F.3d at 235. Mere disagreement as to the appropriate treatment is insufficient to state a constitutional violation. Spruill, 372 F.3d at 235.

[8] Considering the uncontroverted record at bar against Estelle and its progeny, the court finds that plaintiff's claims do not rise to an Eighth Amendment violation. Significantly, plaintiff has presented nothing to contradict medical records establishing that he received numerous dental examinations and treatments to resolve routine problems, as well as emergency concerns. (D.I.12, ex. 4) He received treatment for accompanying problems, consented to the removal of several teeth, and is scheduled to have dentures fabricated.

*4 Furthermore, to the extent that plaintiff relies on the theory of respondent superior to hold defendant, a corporation, liable, he has failed to allege a policy or custom that

demonstrates such deliberate indifference. Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir.1989): Miller v. Correctional Med. Sys., Inc., 802 F.Supp. 1126, 1132 (D.Del.1992): Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir.2003).

V. CONCLUSION

For the reasons stated, defendant's motion for summary judgment is granted. An appropriate order shall issue.

ORDER

At Wilmington this 16th day of August, 2007, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion for summary judgment is granted. (D.I.11)

2. Defendant's motion to deem dispositive motion unopposed and enter judgment is denied as moot. (D.I.16)

3. The Clerk of Court is directed to enter judgment for defendant and against plaintiff.
FN1. Because defendant referred to matters outside the pleadings, its motion to dismiss is being treated as a motion for summary judgment. See Fed.R.Civ.P. 12(b)(6); (D.I.15).
FN2. Defendant submitted medical records that briefly reference two of plaintiff's grievances: "Grievance discussion # 52565"; and "Signed off on grievances # 52565 and # 49685". (D.I.12, ex. 2) Neither party submitted: (1) copies of the grievances in issue; (2) grievance log records; or (3) additional documentation regarding the grievances. ( See D.I. 12, ex. 3 at 6-7, procedure for medical grievances). Without this documentation, the factual background herein is based on an integration of plaintiff's claims with defendant's exhibits.
FN3. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [§ 42 U.S.C. § 1983] by a prisoner until such administrative remedies as are available are exhausted."
D.Del.,2007.
Blackston v. Correctional Medical Services, Inc.
--- F.Supp.2d ----, 2007 WL 2325210 (D.Del.)

## CERTIFICATE OF SERVICE

I, James Drnec, hereby certify that on the 28th day of May, 2008, the foregoing

Defendants Motion for Summary Judgment was filed via CM/ECF and served First Class Mail

upon the following:

> Russell Steedley
> SBI# 249572
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, DE 19977

_____/s/ James E. Drnec_____
James E. Drnec, Esquire (#3789)