## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| RUSSELL STEEDLEY, | ) |
| :--- | :--- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 07-448-GMS |
| | ) |
| CORRECTIONAL MEDICAL SERVICES, ) | |
| et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

## **I. INTRODUCTION**

The plaintiff Russell Steedley ("Steedley"), an inmate housed at the James T. Vaughn

Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983

alleging delay and denial of medical care in violation of the Eighth Amendment.[1]  He appears *pro*

*se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (D.I.

9.)  Now before the court is the motion for summary judgment of the defendants Correctional

Medical Services, Inc. ("CMS"), Scott Altman ("Altman"), and John Rundle ("Rundle")

(collectively "the defendants"), and Steedley's response thereto.  (D.I. 47.)  The defendants move

for summary judgment on the grounds that a portion of Steedley's claims are time-barred and

Steedley cannot establish a constitutional violation.  For the reasons that follow, the court will

grant the defendants' motion for summary as to Altman and Rundle and will deny it as to CMS.

---

[1]The James T. Vaughn Correctional Center was formerly known as the Delaware
Correctional Center.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The amended complaint contains allegations for actions occurring from the summer of

1997 through July 12, 2007. The original complaint was filed on July 16, 2007.[2] CMS began

providing medical care to Delaware correctional institutions on July 1, 2005. (D.I. 47, at 4.)

Steedley's main complaint is that CMS was deliberately indifferent to his need for hip

replacement surgery. (D.I. 1, 13.) Steedley has a severe osteoarthritic hip joint and suffers from

degenerative joint disease. (D.I. 1.) He alleges that despite several physicians' recommendations

that undergo hip replacement surgery, CMS administrators refused to approve the procedure.

(D.I. 13.) He also alleges that he is treated with cost savings drugs that are destroying his organs.

(*Id.*) Steedley seeks compensatory and punitive damages and injunctive relief for, among other

things, hip replacement surgery and necessary physical therapy. (D.I. 1.)

Steedley named two CMS entities as defendants: CMS Regional and the local branch of

CMS Regional assigned to VCC during the relevant time period. (D.I. 13.) The local branch of

CMS was served, but did not respond to the complaint. It appears, however, that the two entities

---

[2]The computation of time for complaints filed by *pro se* inmates is determined according to the "mailbox rule." In *Houston v. Lack*, 487 U.S. 266 (1988), the United States Supreme Court held that a prisoner's notice of appeal of a habeas corpus petition was deemed filed as of the date it was delivered to prison officials for mailing to the court. While *Houston* dealt specifically with the filing of a habeas appeal, the decision has been extended by the Court of Appeals for the Third Circuit to other prisoner filings. *See Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998). Additionally, this district has extended the *Houston* mailbox rule to *pro se* § 1983 complaints. *Gibbs v. Deckers*, 234 F. Supp. 2d 458, 463 (D. Del. 2002).

Steedley's original complaint was signed on July 16, 2007, and the envelope it was mailed in is post-marked July 18, 2007. Therefore, Steedley's complaint was delivered to prison authorities for mailing some time between July 16, 2007 and July 18, 2007. Giving Steedley the benefit, the court concludes that Steedley's complaint was filed on July 16, 2007, the date it was signed, and the earliest date possible that it could have been delivered to prison officials in Delaware for mailing.

are one and the same and therefore, it was unnecessary for Steedley to name both as defendants. Other named defendants are Gail Eller ("Eller"), nursing director at the VCC, John Rundle ("Rundle"), CMS Medical Administrator, and Scott Altman ("Altman"), Quality Assurance Manager/Supervisor for the Office of Information on Inmate Medical Issues at the CMS Regional Office.[3] Rundle and Altman were identified by Steedley after he filed his amended complaint and there are no specific allegations directed against them in either the complaint or the amended complaint. (D.I. 20.)

Steedley was treated in the chronic care clinic on several occasions from July 14, 2005 through November 11, 2005 for chronic pain due to hip osteoarthritis. (D.I. 48, ex. A.)[4] During this time he received diagnostic testing, cortisone injections, pain medications, and submitted sick call requests regarding his condition. By January 31, 2006, Steedley's hip pain had worsened since his November visit. On February 6, 2005, he received medication and a cane for assistance in walking. He was scheduled to return in three months.

Steedley submitted sick call slips on May 4, 2006 and May 12, 2006, complaining that he was running low on his chronic care medications and needed a renewal. On each occasion the response was that he was "scheduled." He submitted a sick call slip on June 6, 2006, complaining that he had not seen a physician in over four months. The response was

---

[3]The USM-285 form for Eller was returned unexecuted on November 26, 2007. (D.I. 23.) The specific allegations against Eller are that she chaired a Level II medical grievance hearing, explained to Steedley that his grievance for hip replacement surgery was being denied because CMS administrators required additional information, and refused to provide Steedley the names of those administrators. (D.I. 13, ¶¶ 27-29.)

[4]Except as otherwise indicated, the facts regarding medical treatment are taken from D.I. 48.

"appointment to be scheduled." Steedley was finally seen in the chronic care clinic on June 12, 2006. At that time he complained of hip and joint pain and had extreme limited range of motion in both hips. Medication and x-rays were ordered. The July 18, 2006 x-ray revealed considerable joint space narrowing and rheumatoid arthritis with degenerative changes.

Steedley was seen on August 14, 2006. Testing revealed rheumatoid and osteoarthritis of the hip. Steedley ambulated with a cane, his gait was unsteady, and had decreased range of motion to the hip secondary to pain. The same day there was request for an orthopedic consultation, and it took place on September 12, 2006 with Dr. Richard P. DuShuttle ("Dr. DuShuttle"). He diagnosed marked degenerative joint disease, bilateral hips with erosion. Dr. DuShuttle explained to Steedley that his options were to treat the condition conservatively versus total hip replacements. Steedley was informed that he was young for a total hip replacement, that the replacement would not last a lifetime, and that a repeat total hip replacement becomes more difficult. Steedley was advised that the surgery, based upon pain, should be considered as a last resort as there was no guarantee it would help him. Steedley was to return to see Dr. DuShuttle p.r.n. (i.e., when necessary). After review of Dr. DuShuttle's report, on September 19, 2006, the CMS provider recommended no further action noting that, although Steedley was a candidate, he was too young for a total hip replacement and to focus on maintaining Steedley's current weight.

Steedley was seen on October 3, 2006. Medications were ordered and outpatient consultation for physical therapy was forwarded and approved on October 6, 2006. The physical consultation request noted that Steedley will eventually require bilateral total hip replacement. Steedley received follow-up care on October 24, 2006 and November 21, 2006.

-4-

On December 21, 2006, Steedley submitted a sick call request for physical therapy complaining that he had been approved for physical therapy two months prior, but had yet to be taken for the appointment. Steedley was told by a physician to request a follow-up appointment. An appointment was scheduled, but Steedley did not show up for sick call.

Steedley submitted sick call slips on January 6 and January 15, 2007, complaining that his medications were about to expire and his physical therapy had yet to begin. The response was that Steedley's prescriptions had not expired, and an appointment was scheduled with physicians. On January 10, 2007, Steedley wrote a memo to FCM Administration staff complaining that he had not yet seen a physical therapist and asking, if the physical therapy option was still being pursued or, if the option could be bypassed, could he proceed to the surgery recommended by Dr. DuShuttle.[5] (D.I. 52, ex. 5.)

Steedley was seen on January 18, 2007.  At that time, a surgery consultation was ordered noting failed medicinal outpatient therapies.[6]  Steedley states that he was told he had kidney problems that were a product of his long term use of pain relievers and anti-inflammatory medication prescribed for his chronic hip problem.  (D.I. 13, ex.)  The CMS OP Review Communications Form sought additional information regarding the request, including whether Steedley had a physical therapy evaluation, a copy of the physical therapy notes, and the results of a re-ordered x-ray.  The site response indicates that the physical therapy had not taken place

---

[5]The memo is typed to FCM, but that entry is crossed out, with CMS inserted in its place.

[6]Vicodin is indicated for the relief of moderate to moderately severe pain. *Physicians' Desk Reference* 532 (60th ed. 2006)  Indocin is indicated for moderate to severe rheumatoid arthritis and moderate to severe osteoarthritis. *Id.* at 1968-69.

because the appointment was scheduled in February, and the x-ray was pending. The x-ray, taken February 5, 2007, revealed severe chronic changes at the right and left hip joints.

On February 12, 2007, Steedley was taken to the Bayhealth Medical Center for a physical therapy evaluation. The assessment states that Steedley has degenerative hip disease and presents with limited range of motion and strength. Steedley did well with his initial exercises and was given a copy of a home exercise program to continue. Steedley was to continue with the home exercise program as needed. The short term goals and long term goals were noted as "not applicable."

Steedley submitted a sick call request on February 17, 2007, complaining that his chronic care medications would run out in two days, was seen on March 2, 2007, and scheduled for a follow-up in three months. On April 4, 2007, Steedley submitted a medical request complaining that his pain medication had run out. Nurse Ott reviewed Steedley's chronic care chart that day and noted that his medications were up to date, and lab work was ordered.

Steedley filed a grievance on April 10, 2007, on the basis that Dr. DuShuttle had recommended a total hip replacement in September 2006, and a physical therapist who put him through a battery of tests in January 2007 concurred that Steedley's only viable option was to undergo hip surgery. D.I. 13, ex.) Steedley asked CMS to follow-through with the recommendation. (*Id.*) At Level II grievance stage, CMS administrators postponed the decision regarding the surgery while awaiting further information from Dr. VanDusen. (*Id.*) Steedley states that when he met with CMS staff regarding his grievance, Eller informed him that the request for the surgery required additional information. (D.I. 52, ex. 1, Pl.'s aff.) Steedley states

-6-

that he asked Eller who set the criteria and was told it was CMS administrators, but Eller would not provide names. (*Id.*)

Steedley was seen in the chronic care clinic on May 7, 2007, his medications renewed, and he was scheduled for a follow-up in three months. Steedley submitted a medical request on May 30, 2007, to re-order his pain medication. Steedley was advised that he had been seen on May 7, 2007, and would have to wait until his regular visit. A CMS OP Review Communication form indicates a request for a total hip replacement was made on May 9, 2007. (D.I. 65. ex. A.)[7] CMS requested copies of the most recent physical therapy notes, a copy of the orthopedic consultation notes recommending surgery, the estimated release date of Steedley, and his weight loss. (*Id.*) The form indicates that if the requested information was not received by May 24, 2007, then the request is deemed automatically "not met" and a new request must be submitted. (*Id.*) The form indicates that there was not a timely response.

Steedley was seen on June 18, 2007, his medications renewed and he was placed on a diet. He was prescribed ACE for renal protection. Steedley states that at this visit the nurse practitioner expressed concerns regarding his kidney function, and checked on the consultation request but was told that CMS had requested additional information. (D.I. 52, ex. 1, Pl.'s aff.) Steedley states that the nurse practitioner told him that CMS administrators were responsible for deciding who received surgery, but when he asked who the individuals were, the nurse practitioner would not provide the names. (*Id.*) Steedley was seen again on July 23, 2007, and continued with his regular medications, with additional medications ordered. An orthopedic consultation for a total hip replacement evaluation was requested on August 23, 2007, and

---

[7]This document was not included with the medical records provided by the defendants.

approved on August 31, 2007. The presumed diagnosis was intractable pain from avascular necrosis of the right hip.[8] It notes the failed outpatient physical therapy.

Steedley was seen in the chronic care clinic on September 14, 2007. He was "very adamant that he wants the hip replacement because the medications are causing kidney deterioration." Steedley was advised on September 26, 2007, that CMS administrators had approved right hip replacement surgery, that the procedure would take place within a couple of months, but that for security reasons CMS could not give Steedley the exact date. (D.I. 52, ex. 1, Pl.'s aff.) Steedley was re-evaluated by Dr. DuShuttle on October 2, 2007, who recommended a total right hip replacement and indicated he would await scheduling by the Department of Correction. Right total hip replacement surgery was performed on Steedley on January 21, 2008, at the Millford Memorial Hospital.

Ronnie Moore, the Health Services Administrator for CMS at VCC states that neither Altman nor Rundle had the authority or ability to approve or deny surgical procedures for inmates. (D.I. 47, ex. B, Moore aff.) Rundle also states that he had no authority to approve or deny surgical procedures for inmates. (*Id.* at Rundle aff.)

Steedley submitted a number of inmate affidavits to support his position that CMS has a policy of cost-saving or health care avoidance tactics. (D.I. 52, exs. 8, 9, 11, 12, 15, 16.) The gist of the affidavits is that medical care is delayed or denied by CMS until an inmate files a § 1983 lawsuit; at that point the medical care is provided. (*Id.*)

---

[8]Avascular necrosis is death of bone tissue due to a lack of blood supply. http://www.mayoclinic.com/health/avascular-necrosis/DS00650.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005).
Thus, summary judgment is appropriate only if the party shows there are no genuine issues of
material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome
of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of
the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial
burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v.
Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most
favorable to the nonmoving party, with all doubts resolved against entry of summary judgment.
*Blackburn v. United Parcel Serv. Inc.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party will not be
sufficient for denial of a motion for summary judgment; there must be enough evidence to enable
a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby,
Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential
element of its case with respect to which it has the burden of proof, the moving party is entitled
to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

## IV.  DISCUSSION

### A.  Statute of Limitations

The defendants move for summary judgment on the events occurring prior to July 19, 2005, on the grounds that they are barred by the applicable statute of limitations period. Steedley appears to concede the issue as he responds that the statute of limitations commenced on September 12, 2006, after a medical expert confirmed his condition was serious and required surgery.

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1983). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* Del. Code Ann. tit. 10, § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Id.* Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. See *Mattis v. Dohman*, 260 F. App'x 458 n.3 (3d Cir. 2008) (not reported). There being no genuine issue of material fact, the court will grant the motion for summary judgment on the statute of limitations issue.

### B.  Medical Needs

Rundle and Altman move for summary judgment on the grounds that Steedley cannot establish that they were deliberately indifferent to a serious medical need or that CMS instituted a policy or custom that demonstrates deliberate indifference and that they furthered that policy or custom. More particularly, they argue that there is no evidence that either of them were authorized to made decisions regarding the surgery and neither was involved in the decision-

-10-

making process. The defendants argue that CMS can only be liable if it instituted a policy or custom that demonstrates deliberate indifference. The defendants argue that the medical records and undisputed facts show that CMS provided extensive care and treatment to Steedley.

Steedley argues that Rundle and Altman held positions of authority which advanced CMS' cost-saving practices and customs. Steedley contends that Moore's affidavit was made without personal knowledge as he was hired after Steedley filed this complaint. He contends that Rundle's affidavit is self-serving. Steedley argues that Rundle and Altman's participation in the medical grievance process, and as overseers of inmate complaints, directly links them to the cost-saving practices.

He further argues that providing medical care that is ineffective and/or cheaper in cost, at the expense of a prisoner's suffering, cannot be deemed reasonable or appropriate. He argues that CMS administrators and/or officials delayed, stalled, postponed, and denied approval of the surgery and continued to ignore physicians' requests for consultative requests even after treatment by medication proved ineffective. Steedley relies upon a number of inmate affidavits to support his position that CMS has a policy of cost-saving or avoidance tactics.

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail in a medical case, Steedley must have a serious medical need and prison officials' acts or omissions must indicate deliberate indifference to that need. *Id.* A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally

-11-

interfering with the treatment once prescribed ." *Estelle*, 429 U.S. at 104-05. Mere negligence does not violate the Eighth Amendment. *Id.* at 106. Additionally, "mere disagreement as to the proper medical treatment" is insufficient to establish an Eighth Amendment violation. *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted). The Third Circuit has specifically found deliberate indifference when: (1) a prison official knows of the prisoner's need for treatment but intentionally refuses to provide it; (2) the prison official delays necessary medical treatment for non-medical reasons; or (3) the prison official prevents a prisoner from receiving needed or recommended treatment. *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

Additionally, "[a][n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. *Id.; see Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (not reported). Courts generally have found that prison health care administrators do not act with deliberate indifference when the prisoner plaintiff is receiving

treatment from the prison doctor. *See, e.g. Hemingway v. Falor*, 200 F. App'x 86, 91 (3d Cir. 2006) (not reported); *Miller v. Hoffman*, Civ. No. 97-7987, 1999 WL 415397, at \*11 (E.D. Pa. June 22, 1999), *aff'd*, 225 F.3d 649 (3d Cir. 2000) collecting cases. However, health care administrators are not immune from liability; where the facts indicate personal involvement in an inmate's allegedly deficient medical treatment, courts have refused to grant summary judgment in favor of the administrator. *Curry v. Thomas*, Civ. No. 07-94J, 2008 WL 4155099, at \*4 (W.D. Pa. Sept. 8, 2008), collecting cases.

### 1. Rundle and Altman

With respect to the individual defendants Rundle and Altman, there is no mention of them in the medical records. Although Steedley states that Rundle was directly notified of his condition, the exhibit submitted by Steedley contains no such information. (D.I. 52, ex. 5.) Rather, the memo Steedley relies upon to demonstrate Rundle's knowledge, was not directed to Rundle, but to "FCM Administration staff." (*Id.*) Rundle's affidavit states that he had no authority to approve or deny surgical procedures.

The only mention of Altman in the record is found in a letter to a non-party inmate regarding that inmate's dental condition. The letter is dated December 7, 2006, and is signed by Altman as CMS quality assurance monitor. The letter is not related to the issues in this case.

Although Steedley claims that Rundle and Altman held positions of authority which advanced CMS' cost-saving practices and customs, there is no evidence of such conduct. Nor is there any evidence of their personal involvement in Altman's alleged constitutional violations. For the above reasons, the court will grant the defendants' motion for summary judgment as to Rundle and Altman.

-13-

## 2. CMS

Steedley claims that CMS has a policy to delay or deny reasonable medical care as a cost saving measure, and this policy caused him to experience unnecessary pain for a number of years. In order to establish that CMS is directly liable for the alleged constitutional violations, Steedley "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [he] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories). Assuming the acts of CMS' employee have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

-14-

Policies that subject prisoners to pain that serves no penological purpose are unconstitutional. *See Estelle*, 429 U.S. at 103. "[T]he *Estelle* test gives substantial latitude to prison medical authorities to diagnose and treat inmates patients, but '[i]mplicit in this deference to . . . is the assumption that such an informed judgment has, in fact been made. . . .'" *Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008) (citations omitted) (not reported); *see Monmouth*, 834 F.2d at 346 ("Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." (internal quotation and citation omitted.)

With respect to CMS, there can be no doubt that Steedley has proven a serious medical need. Indeed, the long sought after hip replacement surgery has finally taken place. The question that remains is whether there are genuine issues of material fact that relate to the second prong of the *Estelle* test. Put simply, whether CMS was "deliberately indifferent" to Steedley's serious medical needs. Although CMS personnel provided Steedley with medical care, the court's discomfort with the record lies with the objective evidence that: (1) on September 19, 2006, CMS determined to take no further action regarding hip replacement surgery, even though Steedley was a candidate, on the basis that he was "too young" for a total hip replacement, and it opted instead to monitor Steedley's weight; (2) an outpatient physical therapy consultation was requested in October 2006, yet Steedley was not taken for the physical therapy evaluation until February 2007; (3) in January 2007, a second surgical consultation request noted that medicinal therapies had failed, yet CMS did not approve the surgery, but instead opted to wait for physical therapy results even though the physical therapy had been pending since October 2006; (4) CMS requested information following the May 2007 hip replacement request, including among other

things, Steedley's release date; (5) Steedley was finally approved for hip replacement surgery in September 2007, but the surgery did not take place until January 2008. The delay in providing Steedley the necessary hip replacement surgery, from the time it was first medically determined that Steedley was a candidate in September 2006, until it was finally performed in January 2008, raises concerns of a constitutional dimension. As it now stands, the record leaves unexplained answers to why there was such a delay in performing the surgery Steedley required. For the above reasons, the court will deny the defendants' motion for summary judgment as to CMS.

## C. Show Cause

The defendant Gail Eller has not been served. The USM-285 form for Eller was returned unexecuted on November 26, 2007. (D.I. 23.) Therefore, on or before *April 6, 2009*, Steedley shall **show cause** why Eller should not be dismissed for failure to serve process upon her, within one hundred twenty days of filing the complaint, pursuant to Fed. R. Civ. P. 4(m).

## V. CONCLUSION

For the above stated reasons the court will grant the defendants' motion for summary judgment as to Rundle and Altman and will deny it as to CMS. Steedley shall show cause why Eller has not been served pursuant to Fed. R. Civ. P. 4(m).

An appropriate order will be entered.

_March 19_, 2009
Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE

-16-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RUSSELL STEEDLEY,                      )
                                       )
            Plaintiff,                 )
                                       )
      v.                               ) Civ. Action No. 07-448-GMS
                                       )
CORRECTIONAL MEDICAL SERVICES, )
et al.,                                )
                                       )
            Defendants.                )

**ORDER**

At Wilmington this __19th__ day of ___March___, 2009, for the reasons set forth in

the Memorandum issued this date;

1. The motion for summary judgment of the defendants John Rundle and Scott Altman

and is **granted**. (D. I. 47.)

2. The motion for summary judgment of the defendant Correctional Medical Services is

**denied**. (D. I. 47.)

3. At the close of this case, the Clerk of the Court is directed to enter judgment in favor

of John Rundle and Scott Altman and against the plaintiff.

4. The plaintiff shall show cause on or before _April 6, 2009_ why Gail Eller should

not be dismissed as a defendant pursuant to Fed. R. Civ. P. 4(m). Failure to timely comply with

this order will result in Gail Eller's dismissal without prejudice.

CHIEF, UNITED STATES DISTRICT JUDGE